ACCEPTED
01-15-00327-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/10/2015 10:26:11 AM
CHRISTOPHER PRINI
CLERK

*Oral argument requested*

No. <u>01-15-00327-CV</u>

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/10/2015 10:26:11 AM
CHRISTOPHER A. PRINE
Clerk

In the Court of Appeals
For the First District of Texas at Houston

## *In re NEXION HEALTH AT BEECHNUT, INC. D/B/A BEECHNUT MANOR, Relator*

Original Proceeding from the
Probate Court No. 1 of Harris County
The Honorable Loyd Wright, Presiding Judge
Cause Number 404,607-401

## PETITION FOR WRIT OF MANDAMUS

**Gregory N. Ziegler**
Texas Bar No. 00791985
GZiegler@macdonalddevin.com
**Weston M. Davis**
Texas Bar No. 24065126
WDavis@macdonalddevin.com
**J. Edward Johnson**
Texas Bar No. 24070001
EJohnson@macdonalddevin.com
**MACDONALD DEVIN, PC**
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
214.744.3300 telephone
214.747.0942 facsimile
**Attorneys for Relator**

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

In accordance with Texas Rule of Appellate Procedure 52.2, and to assist the members of this Court in determining whether disqualification and recusal under Texas Rule of Appellate Procedure 16 is necessary, Relators certify that the following is a complete list of the parties, attorneys, and other persons who have an interest in the outcome of this original proceeding:

## Relator

**Nexion Health at Beechnut, Inc. D/B/A Beechnut Manor**
*Represented in the trial court and Court of Appeals by*
**Gregory N. Ziegler**
Texas Bar No. 00791985
GZiegler@macdonalddevin.com
**Weston M. Davis**
Texas Bar No. 24065126
WDavis@macdonalddevin.com
**J. Edward Johnson**
Texas Bar No. 24070001
EJohnson@macdonalddevin.com
MACDONALD DEVIN, PC
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
214.744.3300 telephone
214.747.0942 facsimile

## Respondent
The Honorable Loyd Wright
Presiding Judge of Probate Court No. 1
Harris County

878851.1 2014.60

201 Caroline, 6th Floor
Houston, Texas 77002

**<u>Real Parties in Interest</u>**

**Estate of Shauna Thompson Kent, Deceased, Matthew Gerald Bray, as Temporary Administrator of the Estate of Shauna Thompson Kent (Plaintiffs below)**
*represented by*

Anthony F. Montgomery
Texas Bar No. 14287300
afmpc@flash.net
LAW OFFICES OF ANTHONY F. MONTGOMERY, P.C.
723 Main Street, Suite 610
Houston, Texas 77002
713.651.1719
713.651.1524 fax

878851.1   2014.60

# TABLE OF CONTENTS

**Identity of Parties and Counsel** ............................................................. ii

**Table of Contents** ...................................................................................... vi

**Index of Authorities** ................................................................................ xiii

**Statement of Jurisdiction** ........................................................................ 2

**Issue Presented** ......................................................................................... 2

**Statement of the Case** .............................................................................. 3

**Statement of Facts** .................................................................................... 4

**Summary of the Argument** ...................................................................... 5

**Argument** ..................................................................................................... 6

    **I.**    **Standard of Review** ........................................................................ 6

    **II.**    **Issue:** The trial court had no discretion to compel production of documents protected from discovery by Texas' Medical Committee Privilege........................................ 7

    **III.**    Respondent's clear abuse of discretion leaves Relator without an adequate remedy by appeal. ................................... 14

**Prayer** .......................................................................................................... 15

**Rule 52.3(j)Certification** .......................................................................... 16

**Certificate of Compliance** ....................................................................... 17

**Certificate of Service** ............................................................................... 18

**Appendix Contents** ................................................................................... 19

878851.1   2014.60

# INDEX OF AUTHORITIES

**Cases**            Page

*Canadian Helicopters Limited v. Witting,*
    876 S.W.2d 304 (Tex. 1994) ............................................................ 14

*In re Christus Health Southeast Tex.,*
    No. 09-06-515 CV, 2007 Tex. App. LEXIS 287  (Tex. App.—
    Beaumont Jan. 18, 2007) (orig. proceeding) ................................. 7, 9

*In re Colonial Pipeline Co.,*
    968 S.W.2d 938 (Tex.1998) (orig. proceeding) ................................. 6

*In re Ford Motor Co.,*
    988 S.W.2d 714 (Tex.1998) (orig. proceeding) ................................. 15

*In re Intracare,*
    2007 Tex. App. LEXIS 7488, No. 14-07-00127 (Tex. App.—Houston
    [14th Dist.] September 13, 2007) (orig. proceeding) ...................... 7-8

*In re Living Ctrs. of Tex., Inc.,*
    175 S.W.3d 253 (Tex. 2005) (orig. proceeding) ................................. 6

*In re Methodist Dallas Med. Ctr.,*
    No. 05-13-00134-CV, 2013 Tex. App. LEXIS 5834 (Tex. App.—Dallas
    May 9, 2013, dismissed per settlement) ............................................ 7

*In re Osteopathic Med. Ctr. of Tex.,*
    16 S.W.3d 881 (Tex. App.—Fort Worth 2000, orig. proceeding) .... 7-8

*In re Prudential Ins. Co. of America,*
    148 S.W.3d 124 (Tex. 2004) (orig. proceeding) ............................ 6, 14

*Mem'l Hosp. v. McCown,*
    927 S.W.2d 1 (Tex. 1996) ................................................................ 6

*Walker v. Packer,*
    827 S.W.2d 833 (Tex. 1982) (orig. proceeding) ....................... 6, 14-15

878851.1   2014.60

## Statutes

TEX. GOV'T CODE § 22.221(b) (Vernon 2011) ................................................. 2

40 Tex. Admin. Code § 19.1917 .................................................................. 7

Tex. Health & Safety Code § 161.031 .......................................................... 7

Tex. Health & Safety Code § 161.032 .......................................................... 7

878851.1   2014.60

No._____

In the Court of Appeals
For the First District of Texas at Houston

## *In re NEXION HEALTH AT BEECHNUT, INC.*
## *D/B/A BEECHNUT MANOR,*
### *Relator*

Original Proceeding from the
Probate Court No. 1 of Harris County
The Honorable Loyd Wright, Presiding Judge
Cause Number 404,607-401

## PETITION FOR WRIT OF MANDAMUS

TO THE HONORABLE COURT OF APPEALS:

Relator Nexion Health at Beechnut, Inc. d/b/a Beechnut Manor ("Relator") complains of the trial court's Order compelling discovery of documents protected by Texas' statutory medical committee privilege, and shows:

878851.1  2014.60

# I.  STATEMENT OF JURISDICTION

This Court has jurisdiction over this original proceeding pursuant to Texas Government Code section 22.221(b). *See* Tex. Gov't Code § 22.221(b).

# II.  ISSUE PRESENTED

Whether Respondent abused his discretion in ordering production of the Incident/Accident Reports made at the direction of and under the authority of Relator's Quality Review Committee.

878851.1  2014.60

## III. STATEMENT OF THE CASE

This original proceeding arises out of an action filed on behalf of the Estate of Shauna Thompson Kent against Defendant Nexion Health at Beechnut, Inc. in the underlying proceedings, Cause No. 404,607-401, pending in Probate Court No. 1, Harris County, Texas (the "underlying suit"). The Respondent is the Honorable Loyd Wright, Judge of Probate Court No. 1, Harris County, Texas.

Real Party's underlying lawsuit alleges a healthcare liability claim against Relator to recover wrongful death and survival damages on behalf of Shauna Thompson Kent for negligence and gross negligence during Ms. Kent's stay at Relator's skilled nursing facility. MR: Ex. B at 3. A discovery dispute arose involving two interrogatories and four requests for production from Relator, which sought the production of confidential and privileged Incident/Accident Reports made at the direction of and under the authority of Relator's Quality and Assurance Review Committee. MR: Ex. D; Ex. F at 3. On September 26, 2014 Real Party filed her Motion to Compel and Relator responded in opposition on October 1, 2014. MR: Exs. D, F. Relator and Real Party submitted additional briefing addressing the Incident/Accident Reports between October and December 2014. MR: Exs. G-K. On January 20, 2015, Respondent overruled Relator's objections to

878851.1  2014.60

the discovery requests at issue, denied Relator's assertion that the Incident/Accident Reports at issue are privileged, and ordered Relator's counsel to produce the Incident/Accident Report regarding Shauna Thompson Kent, as well as all incident reports involving patient falls for the three year period prior to the incident in question. MR: Ex. A.

On January 27, 2015, Relator filed a motion for reconsideration of Respondent's January 20, 2015 discovery order and supplemented that motion on February 27, 2015. MR: Exs. M, N. Respondent requested additional documents for in camera review in an order on March 13, 2015. MR: Ex. O. Relator submitted the documents for in camera review on March 24, 2015 and filed a Second Supplement to its Motion for Reconsideration on March 25, 2015. MR: Exs. P, Q. Respondent denied Relator's Motion for Reconsideration on April 6, 2015. MR: Ex. R.

## IV. STATEMENT OF THE FACTS

Relator responded and objected to the motion to compel based on Texas' Medical Committee and Peer Review privilege and provided a declaration verifying the existence of the committee and privileged nature of the documents withheld. MR: Ex. F at 3. After the initial hearing, Relator provided significant additional information supporting the privileged nature of the Incident/Accident Reports at issue and Relator's

 878851.1 2014.60

declaration testimony. MR: Exs. G, I, K. Relator also provided first a privilege log for the Incident/Accident Report for Shauna Thompson Kent and subsequently a privilege log addressing 168 additional Incident/Accident Reports involving falls for three years prior to the incident at issue. MR: Exs. G; N. Respondent reviewed all of Incident/Accident Reports at issue in camera, and ordered all of them to be produced. MR: Exs. A; L; N, P; R.

## V.   SUMMARY OF THE ARGUMENT

Texas law is clear - communications, including reports generated at the direction and under the authority of a Medical Committee, for the purpose of providing a safer facility are privileged, so long as those communications were kept confidential. Relator filed three supporting Declarations of Lakeesha Sowell, the administrator of Relator's nursing facility that each establish that (1) the Incident/Accident Reports at issue were written at the direction and under the authority of Relator's Quality and Assurance Review Committee to assist it in adopting, implementing and monitoring safety at the facility, (2) the documents are considered confidential and privileged by the Quality Review Committee, and (3) the documents were kept confidential by the Quality Review Committee. Relator further submitted facility policies and procedures establishing the

existence of the Quality Review Committee and confirming the testimony of Ms. Sowell.

Because an appeal is not a remedy when the trial court has erroneously ordered production of confidential and private information, this Court should grant Relator's petition for writ of mandamus directing Respondent to vacate his order compelling production of the Incident/Accident Reports at issue.

## ARGUMENT

### I. Standard of review

A writ of mandamus should be issued to correct a discovery order that constitutes a clear abuse of discretion by the respondent, and there is no adequate remedy by an ordinary appeal. *In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1982) (orig. proceeding).

Mandamus relief is appropriate to protect confidential and privileged information from discovery. *In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 256 (Tex. 2005) (orig. proceeding); *Mem'l Hosp. v. McCown*, 927 S.W.2d 1, 12 (Tex. 1996). An appellate court cannot cure the error when a trial court erroneously orders disclosure of privileged information that materially

878851.1  2014.60

affects the rights of the aggrieved party. *In re Osteopathic Med. Ctr. of Tex.,* 16 S.W.3d 881, 883 (Tex. App.—Fort Worth 2000, orig. proceeding).

## II. Issue: The trial court had no discretion to compel production of documents protected from discovery by Texas' Medical Committee Privilege.

Relator withheld the Incident/Accident Reports at issue pursuant to the "Quality Assessment and Assurance Privilege," which protects records and proceedings of a medical committee and applies to nursing facilities. 40 Tex. Admin. Code § 19.1917; Tex. Health & Safety Code §§ 161.031-161.032; *In re Living Centers,* 175 S.W.3d at 256. Relator submitted declaration testimony and documentary evidence conclusively establishing that the Incident/Accident Reports[1] at issue are protected from discovery pursuant to Texas' Medical Committee privilege. MR: Exs. G; I; K; M; N; Q. Four Texas cases specifically address reports such as those at issue in this case and all four specifically hold that such reports are protected from discovery where the privilege is asserted and proved. *See In re Intracare,* 2007 Tex. App. LEXIS 7488, No. 14-07-00127 (Tex. App.—Houston [14th Dist.] September 13, 2007) (orig. proceeding); *In re Christus Health*

---

[1] Each Incident/Accident Report includes a witness form, investigation follow-up procedures, a post-fall review, and neurologic assessment. A blank form was included in the underlying pleadings. See MR: Ex. G (at Ex. C). Relator will submit the Incident/Accident Reports at issue to this Court according to any protocol the Court requests.

878851.1 2014.60

*Southeast Tex.*, No. 09-06-515 CV, 2007 Tex. App. LEXIS 287 at *3 (Tex. App.—Beaumont Jan. 18, 2007) (orig. proceeding); *In re Osteopathic Medical Center of Texas*, 16 S.W.3d 881 (Tex. App.—Fort Worth 2000)(orig. proceeding); *In re Methodist Dallas Med. Ctr.*, No. 05-13-00134-CV, 2013 Tex. App. LEXIS 5834 at *11 (Tex. App.—Dallas May 9, 2013, dismissed per settlement).

In *In re Intracare,* the Fourteenth Court of Appeals granted mandamus relief regarding a trial court's ruling requiring production of an incident report where the defendant/relator presented affidavit testimony establishing the privilege and a privilege log. 2007 Tex. App. LEXIS 7488, No. 14-07-00127 (Tex. App.—Houston [14th Dist.] September 13, 2007, no pet.). The Fourteenth District found that the affidavit was prima facie evidence of the privilege and precluded production of the document unless the affidavit was controverted. *Id.* at *6-9. The court specifically refuted arguments made by the Real Party to Respondent in this case - that (1) the incident report is a business record, (2) is not privileged because it was created by facility staff, and (3) is not privileged because it is a document merely passed through the committee. *Id.*

The Fort Worth Court of Appeals in *In Osteopathic Medical Center* of Texas held the same, finding that affidavit testimony was sufficient to make

878851.1 2014.60

a prima facie showing that an incident report was protected by the medical peer review privilege and that reports, or portions thereof, prepared by persons other than hospital employees or medical staff was not material to question of whether documents were subject to peer review privilege. 16 S.W.3d at 885-86.

The Appellate Court in *In re Christus Health Southeast* reached the same conclusions with respect to an occurrence report prepared at the direction of a hospital committee, noting that "a privilege log and accompanying affidavit are generally sufficient to prove the application of the privilege." *In re Christus Health*, 2007 Tex. App. LEXIS 287 at *3 (citing *In re Living Ctrs. of Texas, Inc.*, 175 S.W.3d 253, 261 (Tex. 2005)).

In support of its assertion that the Incident/Accident Reports are protected from disclosure and privileged, Relator filed four declarations addressing the privilege. MR: Ex. F; M; N; Q (Exhibit A to each document). Lakeesha Sowell is the Administrator at Beechnut Manor. *Id.* Her initial declaration states that "a Medical Committee was established at Beechnut to oversee, review, and evaluate the medical care to residents at Beechnut, to investigate resident incidents/accidents for the purpose of evaluating and improving the overall quality of care at Beechnut, and to review and evaluate the performance of the nurses and other personnel providing care

 878851.1 2014.60

and treatment to Beechnut residents." MR: Ex. F (Ex. A ¶ 3). Specifically, Ms. Sowell testified that:

> Medical Committee Documents are received, reviewed, and created by and for the Medical Committee. The Documents are maintained separate and apart from the resident's clinical medical record. All of the Documents are intended to be and are maintained as confidential and privileged. The Documents are created, generated, obtained and/or procured upon Medical Committee impetus in accordance with the Texas Health and Safety Code and Medical policy and procedure. The Documents are not routinely created and are not generated in the ordinary course of business, but are created, procured and/or obtained by the Medical Committee, as needed, specifically for the purpose of improving and ensuring the quality of nursing care provided in Beechnut.

MR: Ex. F (Ex. A ¶ 4). Ms. Sowell stated the following regarding the privileged documents at issue:

> These are Medical Committee documents that are kept separate and apart from residents' clinical charts. These documents are not kept in the ordinary course of Beechnut's business, but solely for the purpose of carrying out the Medical Committee function or for the purpose of complying with resident investigation report requirements of Texas law. These documents are considered privileged and confidential documents that are not to be disclosed to third-parties except to the Texas Department of Human Services as required by law.

MR: Ex. F (Ex. A ¶ 5).

During subsequent briefing on the privileged documents, Relator provided corporate bylaws and policies and procedures supporting Ms. Sowell's testimony. MR: Ex. G. Relator identified the following procedure that establishes that the Incident/Accident Reports are submitted to and reviewed by the Quality and Assurance team and kept separate from ordinary business records:

5. Conclusion:
   - The Witness Form(s), Incident Report and Investigation Report are submitted to the DON/designee upon their completion
   - The DON/designee then completes the investigation follow up on the Investigation Report form to come to a reasonable, conclusion regarding the causative factors surrounding the incident and the actions necessary to prevent further incidents/accidents.
   - All forms completed as a result of an Incident / Accident should be filed together, by resident by month in a binder in the Administrator/DON/designee's office.

- **Incident report DOES NOT replace assessment data in nurses notes**

878851.1 2014.60



# Incident Report - Review Process

## QA/QI Team-

- Ensures staff are educated regarding administrative notification of significant incidents including what to do on nights and weekends
- Ensures preventative measures are identified and implemented
- Ensures staff are educated regarding immediate steps to take to prevent recurrence ex-padding, low beds, alarms etc
- Ensure staff is aware of flow of incident reports- who gets,when etc.
- Ensures DON/designee tracks incidences daily and if trends are identified, initiates immediate interventions

MR: Ex. G (at Ex. C to opening brief, pgs. 5, 15, 16 of 19).

Finally, after Respondent's January 20, 2015 order, Ms. Sowell submitted three additional declarations that further established the privileged nature of the documents at issue. MR: Exs. M; N; Q (Ex. A to each document). Ms. Sowell states:

> The Medical Committee requires that hospital staff create a report of every occurrence causing injury or complaint at the facility. This documentation is received, reviewed, and created by and for the Medical Committee. The documentation is maintained separate and apart from the resident's clinical medical record and is not kept in the regular course of business. All of the documentation created by or at the instruction of the Medical Committee is intended to be and maintained as confidential and privileged. This documentation is created, generated, obtained and/or procured upon

> Medical Committee impetus in accordance with the Texas Health and Safety Code, the Texas Occupations Code, and the Texas Administrative Code, and is created and kept in accordance with the facility's policies and procedures. These documents are not routinely created and are not generated in the ordinary course of business, but are created, procured and/or obtained by the Medical Committee, as needed, specifically for the purpose of improving and ensuring the quality of nursing care provided at the Defendant's facility.

MR: Ex. M (at Ex. A ¶ 5). Ms. Sowell testified that the 168 additional Incident/Accident Reports that are responsive to Respondent's January 20, 2015 order are privileged. MR: Ex. M (at Ex. A ¶ 6); Ex. N (at Ex. A ¶ 3); Ex. Q (at Ex. A ¶ 5). Relator also submitted privilege logs identifying each of the documents withheld. MR: G (at Ex. D); MR: N (at Ex. B).

In the present case, just as in the four cases cited above, Relator presented Respondent with testimony from a person with personal knowledge that establishes that Relator's Quality Review Committee is a medical committee established pursuant to Texas law and Relator's procedures. The testimony describes the privileged documents at issue and maintains that the reports were prepared for the purpose of evaluation by the Quality Review Committee and not kept with ordinary business records. Ms. Sowell testified that the reports at issue in this case were made at the direction and under the authority of the Quality Review Committee and not

878851.1  2014.60

made or kept in the regular course of business. This evidence is sufficient to establish that the Incident/Accident Reports were prepared at the direction and under the authority of a medical committee for its benefit in evaluating medical services and should be withheld from disclosure.

## III. Respondent's clear abuse of discretion leaves Relator without an adequate remedy by appeal.

A party establishes that no adequate remedy at law exists by showing that the party is in real danger of permanently losing its important substantive and procedural rights. *Prudential Ins. Co.*, 148 S.W.3d at 136; *Canadian Helicopters Limited v. Witting*, 876 S.W.2d 304, 306 (Tex. 1994). After a private document has been produced, inspected, and examined, a holding that the court had erroneously issued the order would be of small comfort to a relator in protecting their privacy. *See Walker*, 827 S.W.2d at 843 (quoting *Automatic Drilling Machines v. Miller*, 515 S.W.2d 256 (Tex. 1974)). With regard to discovery rulings, a party will not have an adequate remedy by appeal when: (1) the appellate court would not be able to cure the trial court's discovery error; (2) the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error; or (3) the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the

 878851.1 2014.60

trial court, after proper request, refuses to make it part of the record. *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex.1998) (orig. proceeding); *Walker*, 827 S.W.2d at 843. A remedy by appeal is inadequate if the trial court's action requires disclosure of confidential information. *Walker*, 827 S.W.2d at 843.

Here, this Court will not be able to cure Respondent's discovery error once the reports at issue are produced. Indeed, there is a real danger of Relator losing important rights granted to it by the legislature of the State of Texas. After the confidential Incident/Accident Reports are produced, inspected, and examined, a holding that the court had erroneously issued the order would be of small comfort to Relator in protecting this privacy. *See Walker*, 827 S.W.2d at 843. Thus, an appeal is not an adequate remedy when the trial court has erroneously ordered the production of confidential and private information. *See id.* Because this Court could not cure the error in Respondent's discovery order, Relator has no adequate remedy by appeal. *See id.*

## Prayer

THEREFORE, Relator respectfully prays this Court grant Relator's Petition, issue a writ of mandamus directing Respondent to vacate its

878851.1 2014.60

rulings of January 20, 2015 and April 6, 2015, and further grant Relator all such other and further relief as this Court deems just.

Respectfully submitted,

/s/ Weston M. Davis
**Gregory N. Ziegler**
Texas Bar No. 00791985
GZiegler@macdonalddevin.com
**Jason A. Burris**
Texas Bar No. 24049591
JBurris@macdonalddevin.com
**Weston M. Davis**
Texas Bar No. 24065126
WDavis@macdonalddevin.com
**MACDONALD DEVIN, PC**
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
214.744.3300 telephone
214.747.0942 facsimile
**Attorneys for Relator**

## RULE 52.3(J) CERTIFICATION

I certify that I have reviewed the foregoing Petition for Writ of Mandamus and have concluded that every factual statement made in said Petition is supported by competent evidence included in the Appendix or Record.

/s/ Weston M. Davis
**Weston M. Davis**

878851.1  2014.60

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4, I hereby certify that this petition contains 3,675 words, *including* those not required to be counted in the word limits. This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying upon the word count provided by the software used to prepare the document.

/s/ Weston M. Davis
**Weston M. Davis**

878851.1  2014.60

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that true and correct copies of the foregoing *Petition for Writ of Mandamus*, and *Sworn Mandamus Record/Appendix*, were served on the following parties in accordance with the Texas Rules of Appellate Procedure on March 9, 2015, in the manner indicated below:

### *Via CMRRR:*

The Honorable Loyd Wright
Presiding Judge of Probate Court No. 1
Harris County
201 Caroline, 6th Floor
Houston, Texas 77002
**Respondent**

### Via E-Filing:

Anthony F. Montgomery
Texas Bar No. 14287300
afmpc@flash.net
LAW OFFICES OF ANTHONY F. MONTGOMERY, P.C.
723 Main Street, Suite 610
Houston, Texas 77002
713.651.1719
713.651.1524 fax


    /s/ Weston M. Davis
    **Weston M. Davis**

# APPENDIX CONTENTS

**Tab**      **Title**

A.      *Order Granting Plaintiff's Motion to Compel Discovery,* Signed January 20, 2015

B.      *Order Denying Defendant's Motion for Reconsideration,* Dated April 6, 2015

C.      *In re Intracare,* 2007 Tex. App. LEXIS 7488, No. 14-07-00127 (Tex. App.—Houston [14th Dist.] September 13, 2007) (orig. proceeding)

D.      *In re Christus Health Southeast Tex.,* No. 09-06-515 CV, 2007 Tex. App. LEXIS 287 (Tex. App.—Beaumont Jan. 18, 2007) (orig. proceeding)

E.      *In re Osteopathic Medical Center of Texas,* 16 S.W.3d 881 (Tex. App.—Fort Worth 2000)(orig. proceeding)

F.      *In re Methodist Dallas Med. Ctr.,* No. 05-13-00134-CV, 2013 Tex. App. LEXIS 5834 (Tex. App.—Dallas May 9, 2013, dismissed per settlement)

G.      40 Tex. Admin. Code § 19.1917

H.      Tex. Health & Safety Code § 161.032

878851.1  2014.60

## CAUSE NO. 404,607-401

| | | |
|---|---|---|
| ESTATE OF SHAUNA THOMPSON KENT, DECEASED | § § § | |
| MATTHEW GERALD BRAY, AS EXECUTOR OF THE ESTATE OF SHAUNA THOMPSON KENT, DECEASED | § § § § | IN THE PROBATE COURT |
| VS. | § § § | NUMBER ONE (1) OF |
| NEXION HEALTH AT BEECHNUT, INC. D/B/A BEECHNUT MANOR AND BEECHNUT MANOR | § § § § | HARRIS COUNTY, TEXAS |

### ORDER GRANTING PLAINTIFF'S
### MOTION TO COMPEL DISCOVERY

On this day this Court after reviewing Plaintiff **Bray's** and Defendant **Beechnut Manor's** Briefs, Argument and evidence concerning requested documents which Defendant **Beechnut** has withheld under the claim of peer review privilege, it is this Court's ruling that Plaintiff **Bray's** Motion to Compel the production of said documents should be GRANTED and that Defendant **Beechnut's** claim of peer review privilege should be denied. It is, therefore,

ORDERED, ADJUDGED AND DECREED that Defendant **Beechnut** produce to Plaintiff **Bray** the incident/accident report, investigation follow-up report, witness statements, incident report QA/CQI log, post-fall review report, medication error report and grievance complaint report, *including the six pages of documents submitted to the Court in Camera,* pertaining to **Ms. Kent** on or before seven (7) days after the signing of this Order.

It is further, ORDERED, ADJUDGED AND DECREED that Defendant **Beechnut** produce to Plaintiff **Bray** any prior incident reports of other patient falls for the *three (3)* ~~five~~-year period prior to the incident in question.

Cause No. 404,607-401
Matthew Gerald Bray v. Beechnut Manor
*Order Granting Plaintiff's Motion to Compel*                                                 *Page 1*

# Exhibit A

It is further, ORDERED, ADJUDGED AND DECREED that Defendant **Beechnut** produce

to Plaintiff **Bray** the disclosure of ownership documentation and information as to the ownership of

the **Beechnut Manor** facility at the time of the incident in question.

SIGNED THIS **20**th day of January, 2015.

JUDGE PRESIDING

Rec /Ras   1/20/15

Cause No. 404,607-401
Matthew Gerald Bray v. Beechnut Manor
*Order Granting Plaintiff's Motion to Compel*                                        *Page 2*

# JUDGE LOYD WRIGHT
Harris County Probate Court No. 1
201 Caroline, 6th Floor
Houston, Texas 77002
Phone 713-368-6700   Fax 713-368-7300

**FROM:**

Judge Loyd Wright

Ruth Ann Stiles

Pam Speer

Toni Williams

Kimberly Hightower

Kevin Scott

Cres Machicek

Renae Brown

Susie Rowley

Betty Hazlewood

Anthi Pavlicek

Don Pylant

**To:** Greg Ziegler/Jason Burris 214/747-0942 Anthony Montgomery 713/651-1524

**Date :**

**RE:** 404,607-401 Estate of Shauna Thompson Kent, Deceased

**Comments:** Order Granting Plaintiff's Motion to Compel Discovery

**PAGE** 1 **OF** 3

CONFIDENTIALITY NOTICE: THE DOCUMENTS ACCOMPANYING THIS TELECOPY TRANSMISSION CONTAINS CONFIDENTIAL INFORMATION WHICH IS LEGALLY PROVILEDGED. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE RECEIPIENT NAMED ABOVE. IF YOU HAVE RECEIVED THIS TELECOPY IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE TO ARRANGE FOR RETURN OF THE ORIGINAL DOCUMENTS TO US AND YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS TELECOPIEDS INFORMATION IS STRICTLY PROHIBITED.
j:winword\misc\fax01

# JUDGE LOYD WRIGHT

Harris County Probate Court No. 1
201 Caroline, 6th Floor
Houston, Texas   77002
Phone 713-368-6700    Fax 713-368-7300

**FROM:**

| | | |
|---|---|---|
| Judge Loyd Wright | Kimberly Hightower | Susie Rowley |
| Ruth Ann Stiles | Kevin Scott | Betty Hazlewood |
| Pam Speer | Cres Machicek | Anthi Pavlicek |
| Toni Williams | Renae Brown | Don Pylant |

**To:** Anthony Montgomery 713/651-1524
J. Edward Johnson 214/747-0942

**Date :**

**RE:** 404,607-401 Estate of Sharma Thompson
Kent, Deceased

**Comments:** Order Denying Defendant's
Motion for Reconsideration and Granting
Plaintiff's Motion to Compel Discovery and
Order Granting Agreed Motion for Continuance

PAGE ___1___ OF __4__

CONFIDENTIALITY NOTICE: THE DOCUMENTS ACCOMPANYING THIS TELECOPY TRANSMISSION CONTAINS
CONFIDENTIAL INFORMATION WHICH IS LEGALLY PROVILEDGED. THE INFORMATION IS INTENDED ONLY FOR THE
USE OF THE RECIPIENT NAMED ABOVE. IF YOU HAVE RECEIVED THIS TELECOPY IN ERROR, PLEASE IMMEDIATELY
NOTIFY US BY TELEPHONE TO ARRANGE FOR RETURN OF THE ORIGINAL DOCUMENTS TO US AND YOU ARE HEREBY
NOTIFIED THAT ANY DISCLOSURE COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE
CONTENTS OF THIS TELECOPIEDS INFORMATION IS STRICTLY PROHIBITED.
j:winword\misc\fax01

DATA-ENTRY
PICK UP THIS DATE

FILED
3/26/2015 2:46:28 PM
Stan Stanart
County Clerk
Harris County

CAUSE NO. 404,607-401

PROBATE COURT 1

| | | |
|---|---|---|
| ESTATE OF SHAUNA THOMPSON KENT, DECEASED | § § § | |
| MATTHEW GERALD BRAY, AS EXECUTOR OF THE ESTATE OF SHAUNA THOMPSON KENT, DECEASED | § § § § § § | IN THE PROBATE COURT |
| VS. | § § | NUMBER ONE (1) OF |
| NEXION HEALTH AT BEECHNUT, INC. D/B/A BEECHNUT MANOR AND BEECHNUT MANOR | § § § | HARRIS COUNTY, TEXAS |

## ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION AND GRANTING PLAINTIFF'S MOTION TO COMPEL DISCOVERY

On this day came on to be heard Defendant, Beechnut Manor's, Motion for Reconsideration and to vacate this Court's January 20, 2015 discovery order and Plaintiff, Bray's, Response in Opposition thereto. Based upon this Court's careful and comprehensive examination and inspection of the disputed documents submitted to this Court *in camera* and based upon this Court's extensive review of the briefs, argument, evidence and controlling authority, this Court finds that the disputed documents fall outside of the range of documents protected by the peer review privilege and are therefore discoverable. Therefore, Beechnut's Motion for Reconsideration and to vacate the January 20, 2015 discovery order is DENIED and Bray's Motion to Compel Discovery of these documents is GRANTED. It is therefore,

ORDERED, ADJUDGED AND DECREED that Beechnut's Motion for Reconsideration and to vacate this Court's January 20, 2015 discovery order is DENIED. It is further,

Cause No. 404,607-401
Matthew Gerald Bray v. Beechnut Manor
*Order Denying Motion for Reconsideration
and Granting Motion to Compel Discovery*

*Page 1*

ORDERED, ADJUDGED AND DECREED that the Defendant **Beechnut** produce to Plaintiff **Bray** the incident/accident report, investigation follow-up report, witness statements, incident report QA/CQI log, post-fall review report, medication error report and grievance complaint report, including the six pages of documents submitted to the Court *in camera* pertaining to Ms. Kent. It is further,

ORDERED, ADJUDGED AND DECREED that Defendant **Beechnut** produce to Plaintiff **Bray** all prior incident reports of other patients' falls for the three-year period prior to the incident in question, including the documents submitted to this Court *in camera* pertaining to prior patient falls and made the basis of **Beechnut's** 26-page privilege log filed with this Court on February 27, 2015. It is further,

ORDERED, ADJUDGED AND DECREED that Defendant **Beechnut** produce to Plaintiff **Bray** the disclosure of ownership documentation and information as to the ownership of the **Beechnut Manor** facility at the time of the incident in question. It is further,

ORDERED, ADJUDGED AND DECREED that the above-described documents be produced by Defendant **Beechnut** to Plaintiff **Bray** on or before five (5) days after the signing of this Order.

SIGNED THIS 6th day of April, 2015.

_____
JUDGE PRESIDING

Rec/Ros 4/6/15

Cause No. 404,607-401
Matthew Gerald Bray v. Beechnut Manor
*Order Denying Motion for Reconsideration
and Granting Motion to Compel Discovery*

Page 2

| | | |
|---|---|---|
| ESTATE OF SHAUNA THOMPSON KENT, DECEASED | § § § | |
| MATTHEW GERALD BRAY, AS EXECUTOR OF THE ESTATE OF SHAUNA THOMPSON KENT, DECEASED | § § § § § | IN THE PROBATE COURT |
| VS. | § § | NUMBER ONE (1) OF |
| NEXION HEALTH AT BEECHNUT, INC. D/B/A BEECHNUT MANOR AND BEECHNUT MANOR | § § § | HARRIS COUNTY, TEXAS |

## ORDER GRANTING AGREED
## MOTION FOR CONTINUANCE

On this day came on to be heard Plaintiff, Bray's and Defendant Beechnut's Agreed Motion for Continuance and the Court after hearing the same is of the opinion that said Motion should be GRANTED. It is, therefore,

ORDERED, ADJUDGED AND DECREED that this case is continued and removed from the trial docket of May 18, 2015, to be reset with a new docket control order signed by this Court at a later time, pending full and final resolution of the discovery dispute set forth in the Agreed Motion for Continuance.

SIGNED this 6th day of April, 2015.

_____
JUDGE PRESIDING

Rec/ROS 4/6/15

Cause No. 404,607-401
Bray v. Beechnut Manor
*Order Granting Agreed Motion for Continuance*

Page 1



1 of 2 DOCUMENTS

**IN RE INTRACARE HOSPITAL d/b/a INTRACARE MEDICAL CENTER HOSPITAL, Relator**

**NO. 14-07-00127-CV**

**COURT OF APPEALS OF TEXAS, FOURTEENTH DISTRICT, HOUSTON**

*2007 Tex. App. LEXIS 7488*

**September 13, 2007, Memorandum Opinion Filed**

**PRIOR HISTORY:** *In re IntraCare Hosp., 2007 Tex. App. LEXIS 1797 (Tex. App. Houston 14th Dist., Mar. 8, 2007)*

**COUNSEL:** For APPELLANTS: Joel Randal Sprott, Houston, TX.; Erin E. Lunceford, Houston, TX.

For APPELLEES: Jorge Luis Gomez, Houston, TX.

**JUDGES:** [*1] Panel consists of Justices Yates, Anderson, and Hudson.

**OPINION**

**ORIGINAL PROCEEDING WRIT OF MANDAMUS**

**MEMORANDUM OPINION**

In this original proceeding, relator, Intracare Hospital d/b/a Intracare Medical Center Hospital, seeks a writ of mandamus ordering the respondent, the Honorable Joseph Halback, Jr., to vacate the February 7, 2007, order granting Plaintiff's Motion to Compel production of privilege log item number 1. We conditionally grant the writ.

Real party in interest, Shantha Abraham, was employed by Intracare as a nurse when she was injured by a psychiatric patient. She filed suit against Intracare. Intracare asserted objections to real party's first set of interrogatories and her first request for production, stating that the responsive documents were protected from discovery, in part, by the medical peer review committee privilege. Abraham then filed a motion to compel responses to the discovery, and Intracare filed a second supplemental objections and responses, and attached a privilege log. Intracare listed eleven documents that were protected by the "peer review" privilege. Intracare also filed a response to the motion to compel.

Before the hearing on the motion to compel, Intracare [*2] filed the affidavit of its risk manager, John Redd. During the hearing, held on January 5, 2007, the trial judge ordered the documents produced for an in camera hearing. A subsequent hearing was conducted, and on February 7, 2007, the trial court ordered Intracare to produce all the documents listed in the privilege log except document number two.

Intracare produced the items ordered to be produced, except for document number one on the privilege log, which is the subject of this proceeding. Intracare claims the trial court abused its discretion in finding this document, an occurrence report, was not protected by the medical committee and peer review privilege.

To show itself entitled to relief by writ of mandamus, relator must establish a clear abuse of discretion by the

# Exhibit C

trial judge and the lack of an adequate remedy by appeal. *In re Prudential Ins. Co., 148 S.W.3d 124, 135-36 (Tex. 2004)*. A trial court abuses its discretion when its decision is "'so arbitrary and unreasonable as to amount to a clear and prejudicial error of law'." *Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992)*(quoting *Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985)*). Mandamus is the proper remedy [*3] to protect confidential documents from discovery. *In re Living Centers of Texas, Inc., 175 S.W.3d 253, 256 (Tex. 2005)*. There is no adequate remedy by appeal when a trial court orders production of privileged documents because the appellate court would not be able to cure the trial court's discovery error. *Memorial--Hosp.-The Woodlands v. McCown, 927 S.W.2d 1, 12 (Tex. 1996)*(citing *Walker, 827 S.W.2d at 843*).

Intracare contends that the occurrence report is protected by the medical committee and peer review privileges because (1) the hospital's safety committee is a "medical committee" under *section 161.031(a) of the Health and Safety Code* established by the hospital to evaluate the medical and health care services provided; (2) the Safety committee requires the completion of an occurrence report for unusual events, accidents, or injuries; and (3) the reports are then used by the hospital to investigate and analyze medical and health care services.

*Section 161.032 of the Health and Safety Code* contains the medical committee privilege, which states that "[t]he records and proceedings of a medical committee are confidential and are not subject to court subpoena." *TEX. HEALTH & SAFETY CODE ANN. § 161.032(a)* [*4] (Vernon Supp. 2006). A "medical committee" is broadly defined as "any committee" of a hospital, including committees appointed "ad hoc" to conduct a specific investigation, or "established under state or federal law or rule or under the bylaws or rules of the organization or institution." *See id.* at *§ 161.031(a),(b)*.

A "medical peer review" committee is defined as "a committee of a health care entity, the governing board of a health care entity, or the medical staff of a health care entity, that operates under written bylaws approved by the policy-making body or the governing board of the health care entity and is authorized to evaluate the quality of medical and health care services or the competence of physicians...." *TEX. OCC. CODE ANN. § 151.002(a)(8)*

(Vernon Supp. 2006). The governing body of a hospital or medical center may form a medical peer review committee or a medical committee to evaluate medical and health care services. *See TEX. HEALTH & SAFETY CODE ANN. § 161.0315(a)*(Vernon Supp. 2006). The medical peer review privilege "protects the products of the peer review process: reports, records (including those produced for the committee's review as part of the investigative review [*5] process), and deliberations." *In re Living Centers of Texas, Inc., 175 S.W.3d 253, 260 (Tex. 2005)*.

There is a statutory business records exception to both the medical committee and medical peer review committee privileges. *Id. at 257*. Therefore, the privileges do not apply to records made or maintained in the regular course of business by a hospital. [1] *Id.* Similarly, the privilege does not prevent discovery of material that has been "presented to a hospital committee if it [is] otherwise available and offered or proved by means apart from the record of the committee'." *Id.* (quoting *Memorial Hosp.-The Woodlands v. McCown, 927 S.W.2d 1, 10 (Tex. 1996)*). While the medical committee privileges promote freedom of discussion in the evaluation of health care services and health care professionals, the right to obtain evidence is also important. *Living Centers, 175 S.W.3d at 258*. Accordingly, the privileges are strictly construed. *Id.*

1 "Records made or maintained in the regular course of business" are those records kept in connection with treatment of patients as well as business and administrative files apart from committee deliberations. *Memorial Hosp.-The Woodlands v. McCown, 927 S.W.2d 1, 10 (Tex. 1996)*.

In [*6] support of its claim of medical committee privilege, Intracare presented to the trial court evidence that Intracare had established a medical committee, called a safety committee, which was responsible for promoting and developing safety standards and a safe environment for patients, visitors, and employees. The policies and procedures of the safety committee state that one of the purposes of the safety committee is to review "safety related occurrence reports." As part of its proof of privilege, Intracare submitted the affidavit of John Redd, Assistant Administrator for Intracare, who stated that the safety committee requires the preparation of an occurrence report for "any unusual occurrence, accident,

injury or harm, or the potential for injury or harm, to a patient, visitor or staff member." The reports are submitted to the hospital risk management office, which presents a summary of these reports to the safety committee. The hospital has developed procedures and policies which define an occurrence report as "a confidential administrative communication between the hospital and its Legal Counsel/Liability Insurance Carrier." These policies and procedures also require the occurrence [*7] report to be forwarded to the risk management office, which summarizes the reports and presents them at the monthly safety committee meetings.

Intracare also submitted the document to the trial court *in camera*. The document is a report, describing the occurrence, and is labeled "Not part of the medical record," and "For Risk Management/Quality Improvement Purposes Only."

We find that Intracare established that the hospital's safety committee is a committee in a health care entity and is authorized to evaluate safety standards for hospital patients, visitors, and personnel. Thus, it qualifies as a medical committee under the Texas Health and Safety Code. *See TEX. HEALTH & SAFETY CODE ANN. § 161.031(a),(b)* (Vernon Supp. 2006). The policies and procedures of the hospital indicate occurrence reports are confidential, and are generated to document safety-related occurrences, to be prepared for submission to the Risk Management office for summary and presentation to the hospital's safety committee. The affidavit of John Redd and its attachments was sufficient to establish a prima facie showing of privilege. *In re Osteopathic Medical Center of Texas, 16 S.W.3d 881, 884 (Tex. App.--Fort Worth 2000, orig. proceeding).* [*8] Once Intracare established a prima facie case of privilege, the trial court was required to conduct an *in camera* review of the documents. The trial court properly conducted an *in camera* review in this case; however, based on this review, the trial court found that the report in question was not privileged. The trial court's order did not state the basis for his ruling.

In the trial court, Abraham moved to compel production on the ground that the withheld documents were maintained in the regular course of business apart from committee deliberations and the forwarding of the documents to the committee did not transform the document into a committee record. In this court, Abraham raises three arguments related to those made in

the motion to compel: (1) the report is not related to Abraham's medical care and is therefore, routinely accumulated information; (2) simply because the report was presented to a committee does not transform it into a committee record, and (3) the contemporaneous nature of the report indicates it was not part of the evaluative process.

Abraham claims the medical committee privilege only applies to documents connected to the committee's evaluation of medical and health [*9] care services. Because Abraham contends the report in question does not relate to Abraham's medical care, she reasons that the document is not privileged, but is routinely accumulated information. We disagree. Intracare presented proof that the preparation of the document in question was required by the safety committee and the report was created for review by the committee in the evaluation of health care services and safety standards at the hospital. The document itself shows that it was not placed in the medical records, and that it was for risk management and quality improvement purposes only. The document does not appear to have been generated for routine business or administrative purposes. Intracare's proof and a review of the *in camera* document establishes that the report was created for the hospital committee's review in the evaluation of hospital safety standards. Even if the document does not relate to Abraham's medical care, it is a document created for and reviewed by the hospital committee in the evaluative process of developing and maintaining a safe hospital environment. Accordingly, it is privileged.

Abraham also asserts that, because the report is unrelated to the [*10] hospital committee's role in evaluating medical and health care services, the medical committee privilege does not apply simply because the document was passed through the committee. [2] Indeed, protection does not extend to "documents 'gratuitously submitted to a committee' or 'created without committee impetus and purpose'." *McCown, 927 S.W.2d at 10.* However, Intracare presented proof in the form of Redd's affidavit and its attachments that the report at issue was not gratuitously submitted to the hospital safety committee, but was created at the direction of the committee for its review safety of health care services and safety standards.

> 2 Abraham's relies on *In re Osteopathic Medical Center of Texas, 16 S.W.3d 881 (Tex. App.--Fort*

*Worth 2000, orig. proceeding)* in support of her claim that the report in this case was not generated for the committee and thus, was not privileged. Two reports were at issue in *Osteopathic:* (1) a Patient Event Quality Tracking Report, and (2) a Security Services Incident Report. *Id. at 883.* The court concluded the first report was entitled to the privilege because it reflected on its face that it was prepared for the medical peer review committee, stating [*11] "Do Not Copy," "Privileged and Confidential," "For Quality Assurance Committee Use Only," and "Not Part of [a Patient's] Medical Record." *Id. at 886.* The document also referenced, in part, the medical and health care provided to the patient, before and after the accident. *Id.* However, the court concluded the second report was "more likely" a report made or maintained in the normal course of business because it was not apparent from the document's face that it was "necessarily prepared by or for the peer review committee for purposes of investigating such occurrences," and it was not related to medical or health care services provided to the patient following the occurrence. *Id.* We find that the report at issue here is analogous to the report found privileged in *Osteopathic.* The report at issue in this case documents the incident, states it is not part of the medical record, and states it is for risk management/quality improvement purposes only. Although the report does not state it is for committee use, Intracare provided proof that the hospital safety committee requires preparation of the report for any unusual occurrence, accident, injury or harm to a patient, visitor or staff member, [*12] and is analyzed for follow-up by Quality Assurance/Risk Management, and for review by the hospital safety committee.

Finally, Abraham claims the medical peer review privilege is meant to protect an evaluative process, not mere records. Because the document in question was created the day of the incident, Abraham argues it must contain routinely accumulated information and must not be connected to the evaluative process. We are unpersuaded that the contemporaneous nature of the report proves that the report is unconnected to the evaluative process. Intracare provided proof to the trial court that the report is required by the hospital safety committee to document unusual occurrences, accidents or injuries. Whether or not the completion of this report occurred on the date of, or subsequent to, the occurrence does not alter the nature of the report, whether its completion was required by the hospital safety committee, or the fact that the hospital safety committee reviews the report in its evaluation of health care services and safety standards.

After reviewing the proof presented by Intracare and reviewing the *in camera* document, we conclude that document number one on the privilege log [*13] is a privileged medical committee record. Therefore, we hold the trial court abused its discretion in granting the motion to compel as to this document. We conditionally grant the petition for a writ of mandamus and direct the trial court to vacate its February 7, 2007, order, insofar as it requires Intracare to produce item number one on the privilege log. The writ will issue only if the trial court fails to act in accordance with this opinion.

PER CURIAM

Petition Conditionally Granted and Memorandum Opinion filed September 13, 2007.

 LexisNexis®

1 of 1 DOCUMENT

IN RE CHRISTUS HEALTH SOUTHEAST TEXAS d/b/a CHRISTUS ST. MARY HOSPITAL

NO. 09-06-515 CV

COURT OF APPEALS OF TEXAS, NINTH DISTRICT, BEAUMONT

*2007 Tex. App. LEXIS 287*

**December 1, 2006, Submitted**
**January 18, 2007, Opinion Delivered**

**PRIOR HISTORY:** [*1] Original Proceeding.

**DISPOSITION:** WRIT CONDITIONALLY GRANTED.

**COUNSEL:** For RELATOR: Erin E. Lunceford, MUNISTERI, SPROTT, RIGBY, NEWSOM & ROBBINS, P.C., Houston, TX.

For REAL PARTY IN INTEREST: John M. Lane, PROVOST UMPHREY LAW FIRM, L.L.P., Beaumont, TX.

**JUDGES:** Before McKeithen, C.J., Gaultney and Kreger, JJ.

**OPINION**

MEMORANDUM OPINION

This original proceeding arises out of a premises liability case in which the plaintiff, Flora McDonald, obtained an order compelling production of documents from the defendant, Christus Health Southeast Texas d/b/a Christus St. Mary Hospital. McDonald alleges a dangerous condition caused her to slip and fall on hospital premises. Christus seeks mandamus relief directing the trial court to vacate an order compelling production of eighty-seven variance reports prepared for the hospital's Safety Committee, an investigation report prepared for the accident in this case, and employee handbooks. We conditionally grant relief.

First, Christus contends peer review and medical committee privileges protect variance reports prepared for the hospital's Safety Committee. *See Tex. Health & Safety Code Ann. § 161.032* (Vernon Supp. 2006); *Tex. Occ. Code Ann. § 160.007* (Vernon 2004). The governing body of a hospital may form a medical peer review committee or a medical committee to evaluate medical [*2] and health care services. *Tex. Health & Safety Code Ann. § 161.0315* (Vernon Supp. 2006). A "medical committee" includes any committee of a hospital. *Tex. Health & Safety Code Ann. § 161.031* (Vernon Supp. 2006). The records of a medical committee are confidential and are not subject to disclosure. *Tex. Health & Safety Code Ann. § 161.032(a)*.

The affidavit of the hospital's manager of risk management states that the purpose of the Safety Committee is to implement the hospital-wide Safety Management Program, that the Safety Committee's duties include investigating and evaluating variances, and that the Safety Committee is authorized to investigate accidents involving visitors and any variance from hospital policy and procedure. According to the hospital's manager of risk management, Quality Assessment Variance Report Forms are confidential documents kept apart from patient records and financial records. In her

Exhibit D

affidavit, the manager identifies eighty-seven documents in the privilege log as documents generated by hospital staff "for the purpose of evaluation, by the Safety Committee, [*3] and to further its investigation, if necessary, of the safety provided" at the hospital.

A privilege log and accompanying affidavit are generally sufficient to prove the application of the privilege. *In re Living Ctrs. of Texas, Inc., 175 S.W.3d 253, 261 (Tex. 2005)* (holding the trial court abused its discretion by ordering production without conducting an *in camera* review of the documents). In this case, the hospital manager's affidavit establishes that the Safety Committee is a medical committee; therefore, the committee's records that are not made in the regular course of business are confidential and not subject to discovery. *Martinez v. Abbott Labs. & Abbott Labs., Inc., 146 S.W.3d 260, 267 (Tex. App.--Fort Worth 2004, pet. denied)* (applying privilege to hospital risk management committee). The affidavit describes the records at issue and maintains that the records are prepared for the purpose of evaluation by the committee and are not kept with patient or financial records. The affidavit supplied by Christus in this case is sufficient to establish a prima facie showing that the documents are entitled to the medical committee privilege [*4] because they were prepared for use by a medical committee in evaluating medical services. The relator established that the variance reports are subject to the medical committee privilege. *See Tex. Health & Safety Code Ann. § 161.032.* Issue one is sustained.

Second, Christus contends the trial court abused its discretion in ordering production of an investigation report subject to the work product privilege. Work product comprises "material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives. . . ." *Tex. R. Civ. P. 192.5(a)(1).* The privilege log identifies an "Investigation Report prepared in Anticipation of Litigation" on May 2, 2005. The supporting documentation supplied to the trial court includes two letters. In the first letter, dated November 10, 2004, McDonald's attorney notified Christus that he had been retained as McDonald's attorney of record. This letter requested that the attorney be contacted within two weeks or "you will have forced me to file suit in a court of appropriate jurisdiction." Christus received the notice on November 17, 2004. In [*5] the second letter, dated January 28, 2005, McDonald's counsel provided a copy

of McDonald's medical records to Christus Health Risk Management. The investigation report, which was prepared six months after the notice letter and one month before McDonald filed suit, was prepared in anticipation of litigation as contemplated by *Rule 192.5.* McDonald does not argue that she showed a substantial need for the materials and that substantially equivalent documents cannot be obtained by other means. *See Tex. R. Civ. P. 192.5(b).* The party's work product prepared in anticipation of litigation is entitled to protection in the absence of such a showing of undue hardship. *Id.* Issue two is sustained.

Third, Relator contends that the trial court abused its discretion in granting McDonald's motion to compel production of any and all employee handbooks of Christus Health Southeast Texas over Relator's objection that the request is overbroad and seeks information that is outside the scope of permissible discovery. As worded, the request covers all handbooks that have ever existed as to any hospital employees. In response, McDonald argues that Christus failed to present [*6] evidence to prove that her request is unduly burdensome. Relator's contention is not that the burden of producing the discovery is too great, but that the scope of the request is too broad. Mandamus is appropriate when the trial court requires production "from an unreasonably long time period or from distant and unrelated locales." *In re CSX Corp., 124 S.W.3d 149, 152 (Tex. 2003).* As is perhaps inherent in a request for "any and all" documents, McDonald's request does not describe with reasonable particularity the documents sought. *See generally In re TIG Ins. Co., 172 S.W.3d 160, 164-65 (Tex. App.--Beaumont 2005, orig. proceeding).* The trial court abuses its discretion by compelling a party to respond to a facially overbroad discovery request. *Id. at 166-67.* In this case, the request could easily be tailored to include only relevant documents. Issue three is sustained.

Finally, Christus contends it has no adequate remedy by appeal. Mandamus relief is appropriate only if the trial court clearly abused its discretion and there is no other adequate remedy at law. *Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992).* [*7] Mandamus relief is appropriate when the trial court orders production of privileged documents. *In re Living Ctrs., 175 S.W.3d at 255.* Mandamus relief is also appropriate when the trial court's order requires the relator to produce "overbroad discovery not sufficiently limited in time." *In re TIG, 172 S.W.3d at 171.* Issue four is sustained.

We hold that the trial court abused its discretion, and there is no adequate remedy at law to remedy the error. Accordingly, we conditionally grant mandamus relief and direct the trial court to vacate its November 21, 2006, order granting Flora McDonald's motion to compel and requiring Christus Health Southeast Texas "to provide completely responsive answers" to the disputed requests for production. We are confident the trial court will vacate its previous order and that any further discovery orders issued in the case will be consistent with this Opinion. The writ shall issue only if the trial court fails to act promptly in accord with this Opinion. The stay of the underlying proceedings issued by this Court is hereby set aside so that the parties may comply with this Opinion.

WRIT CONDITIONALLY GRANTED.

[*8] PER CURIAM



## IN RE OSTEOPATHIC MEDICAL CENTER OF TEXAS

### NO. 2-00-050-CV

## COURT OF APPEALS OF TEXAS, SECOND DISTRICT, FORT WORTH

*16 S.W.3d 881; 2000 Tex. App. LEXIS 2600*

**April 20, 2000, Delivered**

**PRIOR HISTORY:** [**1] TRIAL COURT: 352ND. TRIAL COURT JUDGE: HON. BONNIE SUDDERTH. COUNTY: TARRANT.

This Opinion Substituted by the Court for Withdrawn Opinion of April 6, 2000, Previously Reported at: *2000 Tex. App. LEXIS 2299.*

**DISPOSITION:** Petition for Writ of mandamus conditionally granted in part, denied in part.

**COUNSEL:** FOR APPELLANT: GOODMAN, ODOM, LACY, FLOYD & MIDGLEY, L.L.P. AND LANE ODOM AND JEFFREY A. LACY OF FORT WORTH, TX.

FOR APPELLEE: JIM CLAUNCH AND KIRK CLAUNCH OF FORT WORTH, TX.

**JUDGES:** SAM J. DAY, JUSTICE. PANEL A: DAY, RICHARDS, and GARDNER, JJ.

**OPINION BY:** SAM J. DAY

**OPINION**

[*882] ORIGINAL PROCEEDING

We withdraw our opinion and judgment of April 6, 2000, and substitute the following opinion.

[*883] **INTRODUCTION**

Relator Osteopathic Medical Center of Texas (the "Hospital") seeks mandamus relief from the trial court's order compelling disclosure of two documents that it claims are excluded from discovery by the medical peer review privilege. After examining the documents in question, we find the Hospital has adequately proved, by affidavit, that one of the two documents is a privileged medical peer review document. Accordingly, we conditionally grant the petition for writ of mandamus in part and deny it in part.

**BACKGROUND**

This case involves a slip-and-fall. Maxine Erickson fell in the bathroom at the SMART Institute, a physical therapy rehabilitation facility operated by the Hospital and the University of North Texas Health Science Center, and staffed [**2] by Richards Healthcare, Inc. As a result of her injuries, the Ericksons brought the underlying premises liability case. The Ericksons served the Hospital with a second request for production of documents seeking disclosure of the following items:

**REQUEST FOR PRODUCTION NO. 1:** Any and all accident reports in the possession of Osteopathic Medical Center of Texas regarding the accident which is the basis of this lawsuit to include those created by entities other than Osteopathic Medical Center of Texas. This request does not include any accident reports that were created after the filing of this lawsuit.

**REQUEST FOR PRODUCTION NO. 2:** Any and

Exhibit E

all documents or notes in the possession of Osteopathic Medical Center of Texas regarding any investigation of the accident which is the basis of this lawsuit to include those created by entities other than Osteopathic Medical Center of Texas. This request for production does not include any documentation or notes created after the filing of this lawsuit.

The Hospital objected to disclosure of any such documents on the basis of medical peer review committee privilege. Thereafter, the Ericksons filed a motion to compel discovery [**3] of the documents asserting that the privilege was inapplicable. In response to the motion, the Hospital filed the affidavit of Dr. Bryce Beyer in support of its privilege claim.

The trial court held a hearing on the motion to compel on January 7, 2000, at which time the Hospital tendered the documents to the trial court for in camera inspection. Overruling the Hospital's peer review objections, the trial court granted the Ericksons' motion to compel, in part, and ordered the Hospital to produce (1) the Patient Quality Event Tracking Report, and (2) the Security Services Incident Report. The Hospital seeks relief from this order.

## DISCUSSION

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by ordinary appeal. *See In re Colonial Pipeline Co., 968 S.W.2d 938, 941 (Tex. 1998)* (orig. proceeding); *Walker v. Packer, 827 S.W.2d 833, 840-42 (Tex. 1992)* (orig. proceeding); *Arlington Mem'l Hosp. Found., Inc. v. Barton, 952 S.W.2d 927, 929* (Tex. App.--Fort Worth 1997, orig. proceeding). A party does not have an adequate remedy by appeal when an appellate [**4] court cannot cure the trial court's erroneous discovery order. *See Arlington Mem'l, 952 S.W.2d at 929*. An appellate court cannot cure the error when a trial court erroneously orders disclosure of privileged information that materially affects the rights of the aggrieved party. *See Walker, 827 S.W.2d at 840; Arlington Mem'l, 952 S.W.2d at 929*. Thus, the Hospital is entitled to mandamus relief in this instance if the trial court abused its discretion in compelling production of privileged documents.

The essence of the medical peer review privilege is that documents made [*884] by or for a medical committee or medical peer review committee are confidential and privileged from discovery unless they are made in the regular course of business or the privilege has been waived. [1] *See TEX. OCC. CODE ANN. § 160.007(a), (e)* (Vernon 2000); *TEX. HEALTH & SAFETY CODE ANN. § 161.032(a), (c)* (Vernon Supp. 2000); *Arlington Mem'l, 952 S.W.2d at 929*. The nature and extent of the medical peer review privilege is a question of law. *See Brownwood Reg'l Hosp. v. Eleventh Court of Appeals, 927 S.W.2d 24, 27 (Tex. 1996)* [**5] (orig. proceeding). The burden to establish the privilege is on the party seeking to preclude documents from discovery on this basis. *See Arlington Mem'l, 952 S.W.2d at 929*. To that end, the party has the obligation to prove, by competent evidence, that the privilege applies to the information sought. *See id.* This is generally accomplished by affidavit. An affidavit filed as proof of the privilege must necessarily be descriptive enough to be persuasive. *See id.*

1 The Ericksons did not allege the Hospital waived the privilege or provide proof of waiver at the hearing. Therefore, we do not discuss the issue of waiver in this opinion.

A review of the documents at issue indicates that both documents are pre-printed forms of the Hospital and were completed immediately after or shortly after Ms. Erickson's fall. The Patient Quality Event Tracking Report shows the time and location of the occurrence, the patient's pre-occurrence condition, the nature of the occurrence, the post-occurrence [**6] treatment, witnesses to the occurrence, and a description of the incident or occurrence. This document specifically provides it is "FOR USE BY THE QUALITY ASSURANCE COMMITTEE."

The Security Services Incident Report is marked "Draft," and was apparently completed by an individual in the Hospital's security department. It contains a brief hand-written statement concerning the incident and indicates security was notified.

Dr. Beyer's affidavit indicates that he is the chairman of the Hospital's medical peer review committee (the Medical Staff Quality Assurance Committee), and that he has personal knowledge of the statements made in the affidavit. He avers the Hospital's peer review committee evaluates cases involving patient care at the Hospital and outpatient facilities, including the SMART Institute. The affidavit explains that, pursuant to hospital policy, incident reports are prepared immediately following an

unusual occurrence to facilitate the peer review investigation process. These reports are then forwarded to the Hospital Quality Council Committee for analysis, and summaries are prepared and forwarded to him as chairman of the medical peer review committee with copies of [**7] the reports. These reports are received by, made at the behest of, and maintained by the peer review committee in the performance of its functions. The affidavit goes on to say the reports do not constitute routine business or medical records of the Hospital, and are not a part of the patient's medical chart. Beyer enumerates the specific production requests and states that the documents tendered, which would be responsive to the requests, constitute records and communications to the peer review committee concerning the matter involving Ms. Erickson.

The affidavit is sufficient to make a prima facie showing that the documents are entitled to the claimed privilege. *See In re WHMC, 996 S.W.2d 409, 411* (Tex. App. --Houston [14th Dist.] 1999, orig. proceeding); *Arlington Mem'l, 952 S.W.2d at 928-29; Northeast Community Hosp. v. Gregg, 815 S.W.2d 320, 326* (Tex. App.--Fort Worth 1991, orig. proceeding). Nevertheless, upon in camera submission, the trial court, without specifying the basis for its ruling, determined the documents were not protected by the privilege.

In favor of production, the Ericksons initially argue that the peer review [**8] privilege is inapplicable because the documents in question were prepared by employees [*885] of Richards Healthcare, against whom the Hospital has filed a cross-action. The Ericksons presented evidence consisting of deposition excerpts showing one or both of the reports were prepared by employees of Richards Healthcare and sent to the Hospital's "quality management" department. The fact that the reports, or portions thereof, were prepared by persons other than Hospital employees or medical staff is not material to the question of whether the documents are subject to peer review privilege. Furthermore, there is no statutory requirement that the documents be made by Hospital employees or medical staff.

Next, the Ericksons argue the privilege is inapplicable because the underlying case presents a premises liability case, versus a medical malpractice or health care liability case. However, the Ericksons cite no authority limiting application of the privilege to specific causes of actions, nor are we aware of any. [2] Likewise,

we cannot perceive how the fact that the Hospital has filed a cross-action against Richards Healthcare in the underlying case is relevant to the privilege claim. We therefore [**9] conclude the peer review privilege may be applicable in a premises liability case, provided the party resisting disclosure satisfies the burden of establishing the privilege.

2    *Section 160.007(e) of the occupations code* provides that unless disclosure is required or authorized by law, a record or determination of or a communication to a medical peer review committee is not subject to discovery and is not admissible as evidence *in any civil judicial proceeding*, absent waiver. *See TEX. OCC. CODE ANN. § 160.007(e)* (emphasis added). Nor does *section 161.032 of the health and safety code* limit the privilege to specific types of actions. *See TEX. HEALTH & SAFETY CODE ANN. § 161.032; see also Memorial Hosp.-The Woodlands v. McCown, 927 S.W.2d 1, 2 (Tex. 1996)* (orig. proceeding) (privilege applied in defamation/libel case); *Irving Healthcare Sys. v. Brooks, 927 S.W.2d 12, 14-15 (Tex. 1996)* (orig. proceeding) (privilege applied in libel/slander/interference with business relations case).

[**10] Further, the Ericksons propose the peer review affidavit was controverted by evidence at the motion to compel hearing. This contention, however, is not supported by the record. To the contrary, we find no evidence directly controverting the assertions in Dr. Beyer's affidavit. Deposition testimony in fact supports the allegation that incident reports are made for and sent to the Hospital's quality management committee.

Finally, the Ericksons contend the documents do not fall within the purview of the privilege because they are not related to the quality of medical or health care services or the competence of medical or health care providers. *See TEX. OCC. CODE ANN. § 151.002(a)(7)-(8).* Instead, they contend the reports are the type kept in the ordinary course of business by the hospital. *See TEX. HEALTH & SAFETY CODE ANN. § 161.0315(b).*

"Medical peer review" means "the evaluation of medical and health care services, including evaluation . . . of patient care provided by" professional health care practitioners. *TEX. OCC. CODE ANN. § 151.002(7).* The term includes evaluation of the accuracy of a diagnosis,

the quality of the care provided [**11] by a health care practitioner, and any report to a medical peer review committee concerning activities under the committee's review authority. *Id. § 151.002(7)(B)-(D)*. Under article 4590i, section 1.03(a)(2), "'health care' means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. REV. CIV. STAT. ANN. art. 4509i, § 1.03(a)(2) (Vernon Supp. 2000). The term "medical care" means any act "performed or furnished, or which should have been performed, by one licensed to practice medicine in Texas for, to, or on behalf of a patient during the patient's care, treatment, or confinement." *Id.* § 1.03(a)(6).

[*886] The peer review privilege does not protect records "made or maintained in the regular course of business." *TEX. HEALTH & SAFETY CODE ANN. § 161.032(c)*. For the purposes of peer review analysis, "records made or maintained in the regular course of business" means "records kept in connection with the treatment of [a hospital's] individual patients [**12] as well as the business and administrative files and papers apart from committee deliberations." *McCown, 927 S.W.2d at 10* (quoting *Texarkana Mem'l Hosp., Inc. v. Jones, 551 S.W.2d 33, 35 (Tex. 1977)* (orig. proceeding)).

It is apparent from the face as well as the content of the Patient Quality Event Tracking Report that it was made exclusively for the Hospital's medical peer review committee. On its face, the report specifically states "Do Not Copy," and that it is "Privileged and Confidential," "For Quality Assurance Committee Use Only," and "Not Part of [a Patient's] Medical Record." In addition, the content of the document, in part, references the medical and health care provided to Ms. Erickson by members of the Smart Institute staff and a physician summoned by the staff to aid Ms. Erickson after the occurrence. It describes Ms. Erickson's condition before the occurrence, a diagnosis of her condition after the occurrence, and the care and treatment she received at the Institute until her transfer to a hospital. Moreover, the uncontroverted affidavit of Dr. Beyer explains that the document was prepared to provide information to facilitate the [**13] committee's peer review function of evaluating "the quality of medical and healthcare services" provided by

the Institute following unusual occurrences, such as the one involving Ms. Erickson. The document does not appear to have been generated for routine business or administrative purposes and Dr. Beyer's affidavit supports this interpretation. Thus, we conclude the Patient Quality Event Tracking Report is peer review material and the trial court abused its discretion in ordering production of this report.

However, it is not clear from the face or the content of the Security Services Incident Report that it was necessarily prepared by or for the Hospital's peer review committee for purposes of investigating such occurrences. The document is not related to any medical or health care services provided to Ms. Erickson following the occurrence. To the contrary, it appears to have been prepared as a routine matter by the Hospital's security department for purposes of general information gathering. This document more likely falls within the category of records or reports made or maintained in the normal course of business by the Hospital apart from committee deliberations. That the document [**14] may have been forwarded to and considered by the committee does not transform the document into a committee record. *See Barnes v. Whittington, 751 S.W.2d 493, 496 (Tex. 1988)* (orig. proceeding); *McAllen Methodist Hosp. v. Ramirez, 855 S.W.2d 195, 198 (Tex. App.--Corpus Christi 1993, orig. proceeding)*. Consequently, we cannot conclude the trial court abused its discretion in ordering production of this report.

## CONCLUSION

The writ of mandamus is conditionally granted in part. We direct the trial court to modify its discovery order to the extent the order compels discovery of the Patient Quality Event Tracking Report. A writ will issue only if the trial court does not modify its January 24, 2000 order accordingly. The writ is otherwise denied.

SAM J. DAY

JUSTICE

PANEL A: DAY, RICHARDS, and GARDNER, JJ.

DELIVERED APRIL 20, 2000


**LexisNexis®**

IN RE METHODIST DALLAS MEDICAL CENTER, Relator

No. 05-13-00134-CV

COURT OF APPEALS OF TEXAS, FIFTH DISTRICT, DALLAS

*2013 Tex. App. LEXIS 5834*

May 9, 2013, Opinion Filed

**SUBSEQUENT HISTORY:** Released for Publication June 24, 2013.
Appeal dismissed by, Judgment entered by *Methodist Dallas Med. Ctr. v. Castillo, 2013 Tex. App. LEXIS 6745 (Tex. App. Dallas, May 31, 2013)*
Opinion withdrawn by, Vacated by, in part, Mandamus dismissed by, Judgment entered by *In re Methodist Dallas Med. Ctr., 2013 Tex. App. LEXIS 8210 (Tex. App. Dallas, July 3, 2013)*

**PRIOR HISTORY:** [*1]
    On Appeal from the 193rd Judicial District Court, Dallas County, Texas. Trial Court Cause No. 12-07504-L.

**COUNSEL:** For Appellants: Scott Howard Richard, Law Office Of Scott Richard, Bedford, TX.

For Appellees: Marlow James Muldoon II, Stewart Strong, P.L.L.C., Dallas, TX; James M. Stewart, Stewart Strong, P.L.L.C., Dallas, TX.

**JUDGES:** Before Justices Moseley, Francis, and Fillmore. Opinion by Justice Francis.

**OPINION BY:** MOLLY FRANCIS

**OPINION**

**MEMORANDUM OPINION**

Opinion by Justice Francis

Relator Methodist Dallas Medical Center (Hospital) seeks mandamus relief from the trial court's order compelling production of a "Confidential Quality Review Occurrence Report" it claims is excluded from discovery by the medical committee and peer review privileges. After examining the Occurrence Report, we conclude the Hospital has adequately proven, by privilege log and accompanying affidavit, that the Occurrence Report is subject to the medical committee privilege. We conditionally grant relief.

Evonne Castillo, a visitor to the Hospital, filed a premises liability suit against the Hospital alleging damages occurred after she slipped and fell on Hospital premises. During discovery, she sought the production of "any and all 'incident' reports made by [Hospital], its agents or employees related to the occurrence made the basis of this lawsuit" and "[a]ll investigative reports done not in anticipation of litigation." The Hospital objected to production [*2] of the "Confidential Quality Review Occurrence Report." The Hospital provided a privilege log listing the Occurrence Report as being withheld because it was subject to the peer review committee privilege and credentialing committee privilege, the hospital committee privilege, and/or the confidentiality provisions of the Health Care Quality Improvement Act, *42 U.S.C. §11101-52*. The Hospital also filed the affidavit of Dr. Adam Myers in support of its privilege claim. After a hearing and in camera review, the trial court ordered production of the Occurrence Report.

**Exhibit F**

Mandamus will issue to correct a discovery order if the order constitutes an abuse of discretion for which there is no adequate remedy by ordinary appeal. *See In re Prudential Ins. Co., 148 S.W.3d 124, 135-36 (Tex. 2004)* (orig. proceeding); *Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992)* (orig. proceeding). A party does not have an adequate remedy by appeal when an appellate court cannot cure the trial court's erroneous discovery order. *Arlington Mem'l Hosp. Found., Inc. v. Barton, 952 S.W.2d 927, 929 (Tex. App.--Fort Worth 1997, orig. proceeding)*. An appellate court cannot cure the error when a trial court erroneously [*3] orders disclosure of privileged information that materially affects the rights of the aggrieved party. *See Walker, 827 S.W.2d at 840; Arlington Mem'l, 952 S.W.2d at 929*. Thus, the Hospital is entitled to mandamus relief in this instance if the trial court abused its discretion in compelling production of privileged documents.

The medical committee and medical peer review committee privileges provide that documents created for such committees are privileged from discovery unless the document was made in the regular course of business or the privilege has been waived. *See TEX. OCC. CODE ANN. § 160.007* (West 2012); *TEX. HEALTH & SAFETY CODE ANN. § 161.032* (West 2010). Texas law permits the governing body of a hospital to form a medical committee and medical peer review committee to evaluate the hospital's medical and health care services. *TEX. HEALTH & SAFETY CODE ANN. § 161.0315(a)* (West 2010). A "medical committee" includes any committee of a hospital. *TEX. HEALTH & SAFETY CODE ANN. § 161.031* (West 2010). The nature and extent of the medical committee privilege and medical peer review committee privilege is a question of law. *See Arlington Mem'l, 952 S.W.2d at 929*. While medical privileges [*4] are important in promoting free discussion in the evaluation of health care professionals and health services, the right to evidence is also important, and therefore privileges must be strictly construed. *Mem'l Hosp.-The Woodlands v. McCown, 927 S.W.2d 1, 7 (Tex. 2006)* (orig. proceeding). The burden to establish the privilege is on the party seeking to exclude documents from discovery on that basis, and competent evidence must be presented to prove the privilege applies to the information sought. *See id.* A privilege log, along with accompanying affidavit and representative sample of the documents, is generally sufficient to prove the application of the privilege. *See In re Living Ctrs. of Tex., Inc., 175 S.W.3d 253, 261 (Tex. 2005)*. The affidavit filed as proof of the privilege must necessarily be persuasive. *See Arlington Mem'l, 952 S.W.2d at 929*.

The two-page Occurrence Report at issue is a pre-printed form of the Hospital. The first page is titled "Occurrence Report Form" and states "Confidential Quality Review Committee Document (NOT PART OF MEDICAL RECORD)." It lists the name and identifying information of Castillo, the date and location of the occurrence, and a description of [*5] the occurrence and treatment provided; it is signed by a nurse of the Hospital. The second page provides pre-printed instructions only and states that an occurrence is any event not consistent with routine medical care and/or operation of the hospital and related facilities, or a visitor injury. The person filling out the form is directed not to retain a copy of the Occurrence Report and not to give it to anyone other than risk management.

Dr. Myers's affidavit provides that he is the chief medical officer at Methodist Health System with personal knowledge of the facts contained in the affidavit. He is personally familiar with and has "participated in the oversight of the credentialing, clinical risk management, and quality assurance process" of the Hospital and the making and keeping of records in connection with those matters. The affidavit details the creation of the Hospital's quality review committee, a subcommittee of the Hospital's board of directors, and describes the committee as the apex for the quality assurance program at the Hospital. The committee provides general governance for the quality of service, including safety issues, on the hospital premises including the professional [*6] buildings. The committee investigates "accidents or exposures involving employees, patients or visitors" and "incidents and events involving the safety or security of persons or property." The committee reports its findings to the Hospital board of directors and makes recommendations for quality of care. Occurrence Reports are prepared under the authority and direction of the committee and constitute confidential quality review committee documents and, along with the other documents of the committee, are not public records of the Hospital. Occurrence Reports are not created in the regular course of business and are not part of a patient's medical file. The only copy of the document, except for the one submitted to the court for in camera review, is kept and maintained by the quality review committee.

Through its privilege log and Myers's affidavit,

relator met the standard for claiming medical committee privilege. *See In re WHMC, 996 S.W.2d 409, 411 (Tex. App.--Houston [14th Dist.] 1999, orig. proceeding)*; *Arlington Mem'l, 952 S.W.2d at 928-29.* The trial court, however, determined the Occurrence Report was not protected by privilege.

At the hearing on the motion to compel and in her response, [*7] Castillo argues neither the medical committee nor the medical peer review committee privilege applies because Castillo was a visitor to the hospital and not a patient, and the Occurrence Report is not a medical review of a physician or other medical personnel and was, necessarily, made in the ordinary course of business by a nurse of the Hospital. She contends no authority supports applying either privilege to documents generated in a slip-and-fall premises liability case or in a case involving a visitor to a hospital.

The Hospital cites us to two cases involving the application of medical committee and the medical peer review committee privileges protecting occurrence reports prepared by hospitals in slip-and-fall premises liability cases, both supporting the privilege argument.

The first case, *In re Christus Health Southeast Texas, No. 09-06-00515-CV, 2007 Tex. App. LEXIS 287, 2007 WL 17727 (Tex. App.--Beaumont Jan. 18, 2007, orig. proceeding)*, involved a slip-and-fall on hospital premises. Christus hospital sought mandamus relief from the trial court's order to produce "variance" reports prepared for the hospital's safety committee, an investigation report and employee handbooks. *2007 Tex. App. LEXIS 287, 2007 WL 117727, *1.* The affidavit [*8] prepared by the hospital's manager of risk management stated that, among other duties, the safety committee was authorized to investigate "accidents involving visitors" and the quality assessment variance report forms generated by such investigations were confidential documents kept apart from patient records and financial records. The manager identified eighty-seven documents in the privilege log as documents generated by hospital staff "for the purpose of evaluation, by the safety committee, and to further its investigation, if necessary, of the safety provided" at the hospital. *Id.* The court noted a privilege log and affidavit were generally sufficient to show the application of the privilege. The hospital manager's affidavit established the safety committee was a medical committee and the committee's records were, therefore, not prepared in the normal course of business,

and were confidential and not subject to discovery. *Id.*

In the second case, *In re Osteopathic Medical Center of Texas, 16 S.W.3d 881, 883 (Tex. App.--Fort Worth 2000, orig. proceeding)*, the hospital objected to the disclosure of accident and investigative reports prepared after Maxine Erickson slipped and fell at [*9] a rehabilitative facility owned and operated by the hospital but staffed by another entity. Citing the medical peer review committee privilege, the hospital filed the affidavit of Dr. Bryce Beyer, chairman of the medical peer review committee. *Id. at 884.* Beyer's affidavit said the medical peer review committee evaluated cases involving patient care. The reports in question were prepared immediately following an unusual occurrence, forwarded to the Hospital Quality Council Committee for analysis, and then to him as chairman of the peer review committee. According to Beyer's affidavit, the reports were not routine business or medical records of the hospital, and were not part of a patient's medical chart. After an in camera inspection of the documents, the trial court ordered production of the Patient Quality Event Tracking Report and the Security Services Incident Report. The hospital sought mandamus relief from this order. *Id. at 883.*

The Fort Worth Court of Appeals concluded it was clear from the face as well as content of the Patient Quality Event Tracking report that the report was made exclusively for the hospital's medical peer review committee and Beyer's uncontroverted affidavit [*10] supported that interpretation. *Id. at 886.* Both documents were on pre-printed forms of the hospital and were completed after the incident. The Patient Quality Event Tracking Report reflected the time and location of the incident, the patient's condition before the fall, the nature of the occurrence, post-occurrence treatment, witnesses and a description of the occurrence. The document stated, "Do Not Copy," "For Quality Assurance Committee Use Only," and "Not Part of a Patient's Record." *Id.* Conversely, the court concluded it was not clear from the face or content of the Security Services Incident Report that it was necessarily prepared by or for the hospital's peer review committee for purposes of investigating occurrences, and instead appeared to have been "prepared as a routine matter by the Hospital's security department for purposes of general information gathering." *Id.*

Erickson argued the peer review privilege was inapplicable because the underlying claim was premises

liability instead of medical malpractice or health care liability. *Id. at 885.* The Fort Worth Court of Appeals, noting the lack of authority limiting the application of privilege to specific causes of action, concluded [*11] that once the party resisting disclosure satisfied the burden of establishing privilege, the privilege "may be applicable in a premises liability case." *Id.* The court stated the assertions made in the doctor's affidavit were uncontroverted.

The Fort Worth Court of Appeals also rejected Erickson's argument that the Patient Quality Event Tracking reports were the type kept in the ordinary course of business and did not relate "to the quality of medical or health care services or to the competence of medical or health care providers." *Id.* The court reasoned that, for the purpose of peer review analysis, "records made or maintained in the regular course of business" means "records kept in connection with the treatment of [a hospital's] individual patients as well as the business and administrative files and papers apart from committee deliberations." *Id.* The court concluded the Patient Quality Event Tracking Report was generated to facilitate the hospital's peer review committee function of evaluating "the quality of medical care and healthcare services" and not for "routine business or administrative purposes. *Id.*

We reject Castillo's argument that because this case involves a non-patient [*12] visitor, the medical committee privilege cannot apply. Both the statutes cited above and legal authority show that the privilege is not limited to evaluation of occurrences relating only to direct patient care. *See In re Christus Health Se. Tex., 2007 Tex. App. LEXIS 287, 2007 WL 117727, *1.* Further, the goal of a hospital in evaluating health care services does not, in our view, limit the exercise of privilege to specific causes of action. *See In re Osteopathic Med. Ctr. of Tex., 16 S.W.3d at 885.* Although Castillo claims the document was prepared in the ordinary course of business, the face of the Occurrence Report as well as the uncontroverted affidavit of Myers prove the contrary. Consequently, it was an abuse of discretion for the trial court to order production of this document, and an appeal is an inadequate remedy when the court erroneously orders disclosure of privileged information.

We conditionally **GRANT** relator's petition for writ of mandamus. The writ will issue only in the event the trial court fails to vacate its January 30, 2013 order granting plaintiff's motion to compel in part and denying defendant's motion for protective order and to render an order denying plaintiff's motion to compel and [*13] granting defendant's motion for protective order.

/s/ Molly Francis

MOLLY FRANCIS

JUSTICE

Time of Request: Friday, April 10, 2015    09:52:32 EST
Client ID/Project Name: 2014/60
Number of Lines: 57
Job Number:       1825:508576725

Research Information

Service:   LEXSTAT(R) Feature
Print Request: Current Document: 1
Source: Get by LEXSTAT(R)
Search Terms: 40 TEX. ADMIN. CODE 19.1917

Send to:   DAVIS, WES
           MACDONALD DEVIN PC
           1201 ELM ST STE 3800 RENAISSANCE TOWER
           DALLAS, TX 75270

# Exhibit G

 **LexisNexis®**

TEXAS ADMINISTRATIVE CODE

\*\*\* This document reflects all regulations in effect as of March 31, 2015 \*\*\*

TITLE 40. SOCIAL SERVICES AND ASSISTANCE
PART 1. DEPARTMENT OF AGING AND DISABILITY SERVICES
CHAPTER 19. NURSING FACILITY REQUIREMENTS FOR LICENSURE AND MEDICAID CERTIFICATION
SUBCHAPTER T. ADMINISTRATION

*40 TAC § 19.1917* (2015)

§ 19.1917. Quality Assessment and Assurance

(a) The facility must maintain a Quality Assessment and Assurance Committee consisting of:

(1) the director of nursing services;

(2) a physician designated by the facility; and

(3) at least three other members of the facility's staff.

(b) The Quality Assessment and Assurance Committee:

(1) meets at least quarterly to identify issues with respect to which quality assessment and assurance activities are necessary; and

(2) develops and implements appropriate plans of action to correct identified quality deficiencies.

(c) Texas or the Secretary of Health and Human Services may not require disclosure of the records of the Quality Assessment and Assurance Committee except insofar as such disclosure is related to the compliance of the committee with the requirements of subsection (b) of this section.

(d) Good faith attempts by the committee to identify and correct quality deficiencies may not be used as a basis for sanctions.

(e) The Quality Assessment and Assurance Committee must adopt and ensure implementation of a policy to identify, assess, and develop strategies to control risk of injury to residents and nurses associated with the lifting, transferring, repositioning, or moving of a resident. The policy must establish a process that includes:

(1) analysis of the risk of injury to both residents and nurses posed by the resident handling needs of the resident populations served by the nursing facility and the physical environment in which resident handling and moving occurs;

(2) annual in-service education of nurses in the identification, assessment, and control of risk of injury to residents and nurses during resident handling;

(3) evaluation of alternative ways to reduce risks associated with resident handling, including evaluation of equipment and the environment;

(4) restriction, to the extent feasible with existing equipment and aids, of manual resident handling or moving of all or most of a resident's weight to emergency, life-threatening, or otherwise exceptional circumstances;

(5) collaboration with and an annual report to the nurse staffing committee;

(6) specific procedures for nurses to refuse to perform or be involved in resident handling or moving that the nurse believes in good faith will expose a resident or a nurse to an unacceptable risk of injury;

(7) submission of an annual report by the nursing staff to the Quality Assessment and Assurance Committee on activities related to the identification, assessment, and development of strategies to control risk of injury to residents and nurses associated with the lifting, transferring, repositioning, or moving of a resident; and

(8) in developing architectural plans for constructing or remodeling a nursing facility or a unit of a nursing facility in which resident handling and moving occurs, consideration of the feasibility of incorporating resident handling equipment or the physical space and construction design needed to incorporate that equipment at a later date.

SOURCE: The provisions of this § 19.1917 adopted to be effective May 1, 1995, 20 TexReg 2393; amended to be effective June 1, 2006, 31 TexReg 4458

**NOTES:**

CROSS-REFERENCES: This Section cited in *40 TAC § 19.1601*, (relating to Infection Control); *40 TAC § 19.2326*, (relating to Medicaid Swing Bed Program for Rural Hospitals).

This Chapter cited in *40 TAC § 18.2*, (relating to Definitions); *40 TAC § 18.16*, (relating to Examinations).

13090F

********** Print Completed **********

Time of Request: Friday, April 10, 2015   09:52:32 EST

Print Number:    1825:508576725
Number of Lines: 57
Number of Pages: 2

Send To:   DAVIS, WES
           MACDONALD DEVIN PC
           1201 ELM ST STE 3800 RENAISSANCE TOWER
           DALLAS, TX 75270

Time of Request: Friday, April 10, 2015  09:53:37 EST
Client ID/Project Name: 2014/60
Number of Lines: 445
Job Number:       1827:508576789

Research Information

Service:   LEXSTAT(R) Feature
Print Request: Current Document: 1
Source: Get by LEXSTAT(R)
Search Terms: TEX. HEALTH SAFETY CODE 161.032

Send to:   DAVIS, WES
           MACDONALD DEVIN PC
           1201 ELM ST STE 3800 RENAISSANCE TOWER
           DALLAS, TX 75270

Exhibit H

 **LexisNexis®**

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

HEALTH AND SAFETY CODE
TITLE 2. HEALTH
SUBTITLE H. PUBLIC HEALTH PROVISIONS
CHAPTER 161. PUBLIC HEALTH PROVISIONS
SUBCHAPTER D. MEDICAL COMMITTEES, MEDICAL PEER REVIEW COMMITTEES, AND COMPLIANCE
OFFICERS

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Health & Safety Code § 161.032* (2014)

§ 161.032. Records and Proceedings Confidential

(a) The records and proceedings of a medical committee are confidential and are not subject to court subpoena.

(b) Notwithstanding *Section 551.002, Government Code*, the following proceedings may be held in a closed meeting following the procedures prescribed by Subchapter E, Chapter 551, Government Code:

(1) a proceeding of a medical peer review committee, as defined by *Section 151.002, Occupations Code*, or medical committee; or

(2) a meeting of the governing body of a public hospital, hospital district, hospital authority, or health maintenance organization of a public hospital, hospital authority, hospital district, or state-owned teaching hospital at which the governing body receives records, information, or reports provided by a medical committee, medical peer review committee, or compliance officer.

(c) Records, information, or reports of a medical committee, medical peer review committee, or compliance officer and records, information, or reports provided by a medical committee, medical peer review committee, or compliance officer to the governing body of a public hospital, hospital district, or hospital authority are not subject to disclosure under Chapter 552, Government Code.

(d) The records and proceedings may be used by the committee and the committee members only in the exercise of proper committee functions.

(e) The records, information, and reports received or maintained by a compliance officer retain the protection provided by this section only if the records, information, or reports are received, created, or maintained in the exercise

of a proper function of the compliance officer as provided by the Office of Inspector General of the United States Department of Health and Human Services.

(f) This section and Subchapter A, Chapter 160, Occupations Code, do not apply to records made or maintained in the regular course of business by a hospital, health maintenance organization, medical organization, university medical center or health science center, hospital district, hospital authority, or extended care facility.

(g) Notwithstanding any other provision of this section, the records of a medical committee of a university medical school or a health science center, including a joint committee, may be disclosed to the extent required under federal law as a condition on the receipt of federal money.

**HISTORY:** Enacted by Acts 1989, 71st Leg., ch. 678 (H.B. 2136), § 1, effective September 1, 1989; am. Acts 1993, 73rd Leg., ch. 625 (S.B. 1409), § 6, effective September 1, 1993; am. Acts 1999, 76th Leg., ch. 908 (H.B. 2171), § 4, effective June 18, 1999; am. Acts 2001, 77th Leg., ch. 1420 (H.B. 2812), § 14.782, effective September 1, 2001; am. Acts 2001, 77th Leg., ch. 1511 (S.B. 11), § 3, effective September 1, 2001; am. Acts 2013, 83rd Leg., ch. 1312 (S.B. 59), § 66, effective September 1, 2013.

**NOTES:**

Editor's Notes. --
An amendment to this section by Acts 2001, 77th Leg., ch. 1420 (H.B. 2812), § 14.782 did not take effect pursuant to § 1.002(b) of that Act, which provides: "If any provision of this Act conflicts with a statute enacted by the 77th Legislature, Regular Session, 2001, the statute controls."
2013 amendment,
added (g).

LexisNexis (R) Notes:

CASE NOTES

1. In a suit brought by an unsuccessful bidder for an emergency services contract, the trial court did not err in denying a motion to compel production of the bid submissions based on the medical committee privilege in *Tex. Health & Safety Code Ann. §§ 161.031, 161.032* after conducting an in camera inspection pursuant to *Tex. R. Civ. P. 193.4(a)* because a committee managed the bidding process. Moreover, the contract with the successful bidder lacked relevance under *Tex. R. Civ. P. 192.3(a)*. *Humble Emergency Physicians, P.A. v. Mem'l Hermann Healthcare Sys., 2011 Tex. App. LEXIS 3000 (Tex. App. Houston 1st Dist. Apr. 21 2011)*.

2. Although it was agreed that physicians could not back-door the substance of communications made to a peer review committee by eliciting testimony from witnesses regarding information that was privileged under *Tex. Occ. Code Ann. § 160.007(e)* and *Tex. Health & Safety Code Ann. § 161.032*, the court did not construe a trial court's order as final and declined to issue a writ of mandamus to compel protection of the information. *In re Knapp Med. Ctr., 2008 Tex. App. LEXIS 1864 (Tex. App. Corpus Christi Mar. 13 2008)*.

3. In a nurse's suit against a hospital when she was injured by a psychiatric patient, the trial court abused its discretion in granting the nurse's motion to compel discovery as to an occurrence report as it was protected by the medical committee

and peer review privileges under *Tex. Health & Safety Code Ann. § 161.032*; even if the document did not relate to the nurse's medical care, it was a document created for and reviewed by the hospital committee in the evaluative process of developing and maintaining a safe hospital environment. *In re Intracare Hosp., 2007 Tex. App. LEXIS 7488 (Tex. App. Houston 14th Dist. Sept. 13 2007).*

4. In a premises liability case, reports prepared for the use of a hospital safety committee were subject to the medical committee privilege of *Tex. Health & Safety Code Ann. § 161.032(a)* because they were intended for an evaluation of medical services by a medical committee, as defined in *Tex. Health & Safety Code Ann. § 161.031* to include any committee of a hospital. *In re Christus Health Southeast Tex., 2007 Tex. App. LEXIS 287 (Tex. App. Beaumont Jan. 18 2007).*

5. Where a surgical resident's personnel file had no bearing on Federal Tort Claim Act claims against the government in a case that also involved common negligence claims against the resident and a hospital, pursuant to *Fed. R. Evid. 501*, Texas privilege law applied to the state law issues notwithstanding the presence of the federal claims; thus, the resident's credentialing file, to the extent that it was generated and maintained by the Graduate Medical Education Committee of the hospital, was privileged under the medical committee and peer review privilege of *Tex. Health & Safety Code Ann. § 161.032* and *Tex. Occ. Code Ann. § 160.007. Garza v. Scott & White Mem. Hosp., 234 F.R.D. 617, 2005 U.S. Dist. LEXIS 42382 (W.D. Tex. 2005).*

6. Records and determinations of, and communications to, a hospital's quality review committee were protected by the medical peer review committee privilege under *Tex. Occ. Code Ann. § 160.007(e)* and *Tex. Health & Safety Code Ann. § 161.032(f)*. Under the hospital's bylaws, this committee could perform a peer review evaluation of an incident underlying a health care liability claim and, in connection with a peer review, generate a peer review file containing confidential information that was not kept in the regular course of business. *Martinez v. Abbott Labs., 146 S.W.3d 260, 2004 Tex. App. LEXIS 8064, CCH Prod. Liab. Rep. P17113 (Tex. App. Fort Worth 2004).*

7. Where an incident report was not made for a patient's individual patient record but was made specifically for a medical committee's use, the documents and proceedings generated by the investigation were protected by the medical committee privilege under *Tex. Health & Safety Code Ann. § 161.032(a). Martinez v. Abbott Labs., 146 S.W.3d 260, 2004 Tex. App. LEXIS 8064, CCH Prod. Liab. Rep. P17113 (Tex. App. Fort Worth 2004).*

8. Pursuant to *Tex. Health & Safety Code Ann. § 161.032(a)*, the records and proceedings of a medical committee are confidential, and are not subject to court subpoena; in an action where the personal representative of a decedent sought to discover personal files and records from a healthcare facility, and the facility claimed privilege, the facility failed to introduce any evidence that the documents sought contained confidential communications between patient and physician or that the records were maintained by a physician. *In re Highland Pines Nursing Home, Ltd., 2003 Tex. App. LEXIS 9723 (Tex. App. Tyler Nov. 13 2003).*

9. Trial court did not waive a hospital's exemption from discovery under *Tex. Health & Safety Code Ann. § 161.032(a)* when it released infection control committee reports to the patient in a medical malpractice action; the privilege belonged to the hospital, not the trial court, and production was involuntary from the hospital's standpoint. *In re University of Texas Health Ctr., 33 S.W.3d 822, 2000 Tex. LEXIS 94, 44 Tex. Sup. Ct. J. 38 (Tex. 2000).*

10. In a medical malpractice action brought by one patient, the hospital did not waive the medical peer review committee privilege under *Tex. Health & Safety Code Ann. § 161.032(a)* when it provided information about its infection control committee's evaluation in answers to interrogatories served by another patient in a suit that was consolidated for discovery. *In re University of Texas Health Ctr., 33 S.W.3d 822, 2000 Tex. LEXIS 94, 44 Tex. Sup. Ct. J. 38 (Tex. 2000).*

11. Hospital in a medical malpractice action complied with recently promulgated *Tex. R. Civ. P. 193* and did not make

any waiver under Rule 193 in making its objections to discovery requests on the basis of the medical peer review committee privilege pursuant to *Tex. Health & Safety Code Ann. § 161.032(a)*, even though the amended rule did not become effective until after the patient had served the final notice of deposition and requests for documents and after the hospital had filed its objections to that notice; the hospital's objections and motions made it clear that documents would not be produced and the basis for the objections. *In re University of Texas Health Ctr., 33 S.W.3d 822, 2000 Tex. LEXIS 94, 44 Tex. Sup. Ct. J. 38 (Tex. 2000).*

12. Hospital in a medical malpractice action did not waive the medical peer review committee privilege under *Tex. Health & Safety Code Ann. § 161.032(a)* when it failed to object to the second of three deposition notices, where the hospital had already made its objections clear in response to the earlier, virtually identical notice and request for documents; the hospital was not required to reiterate its objections when only the date and time of the deposition were changed. *In re University of Texas Health Ctr., 33 S.W.3d 822, 2000 Tex. LEXIS 94, 44 Tex. Sup. Ct. J. 38 (Tex. 2000).*

13. When hospital asserted privilege under *Tex. Occ. Code Ann. § 160.007* and *Tex. Health & Safety Code Ann. § 161.032(a)* in response to doctor's request for discovery material in doctor's case against hospitals for improper suspension of his surgery privileges, doctor was entitled under *Tex. R. Civ. P. 193.4* to a hearing on the claim of privilege, including an in-camera review of the disputed material by the trial judge. *In re Ching, 32 S.W.3d 306, 2000 Tex. App. LEXIS 6574, 2000-2 Trade Cas. (CCH) P73097 (Tex. App. Amarillo 2000).*

14. A patient quality event tracking report was subject to a peer review privilege under *Tex. Health & Safety Code Ann. §§ 161.032(a)* and (c) because it was made exclusively for the hospital's medical peer review committee. *In re Osteopathic Med. Ctr., 16 S.W.3d 881, 2000 Tex. App. LEXIS 2600 (Tex. App. Fort Worth 2000).*

15. In a premises liability action, an order compelling a hospital's disclosure of a security services incident report was not an abuse of discretion where the report was not subject to a peer review privilege because under *Tex. Health & Safety Code Ann. § 161.032(c)*, the peer review privilege did not protect records made or maintained in the regular course of business. *In re Osteopathic Med. Ctr., 16 S.W.3d 881, 2000 Tex. App. LEXIS 2600 (Tex. App. Fort Worth 2000).*

16. Records and proceedings of a medical committee that relate to initial credentialing are not business records within the meaning of the Tex. Health & Safety Code Ann. Art. § 161.032(c), and therefore do not lose their privileged character under that section of the *Health and Safety Code. Irving Healthcare Sys. v. Brooks, 927 S.W.2d 12, 1996 Tex. LEXIS 100, 39 Tex. Sup. Ct. J. 1030 (Tex. 1996).*

17. Pursuant to former Tex. Rev. Civ. Stat. Ann. art. 4495b, § 5.06 and *Tex. Health & Safety Code Ann. § 161.032*, except for the hospital's bylaws, rules, and regulations of the board of trustees or medical staff, documents related to the hospital's initial grant of hospital privileges to a doctor, against whom medical malpractice action was brought, were not discoverable. *Brownwood Reg'l. Hosp. v. Eleventh Court of Appeals, 927 S.W.2d 24, 1996 Tex. LEXIS 105, 39 Tex. Sup. Ct. J. 1046 (Tex. 1996).*

18. In a physician's suit against media for reports of his loss of staff privileges, documents and files generated for and by a hospital credentialing committee in its investigation and review of a physician's initial application for staff privileges were protected from discovery pursuant to former Tex. Rev. Civ. Stat. Ann. art. 4495b, § 5.06 and *Tex. Health & Safety Code Ann. § 161.032. Memorial Hosp.-the Woodlands v. McCown, 927 S.W.2d 1, 1996 Tex. LEXIS 110, 39 Tex. Sup. Ct. J. 1021 (Tex. 1996).*

19. Documents relating to a hospital's decision to grant or deny a doctor's application for staff privileges at the facility were discoverable in relators' negligence suit against the health care providers, because the credentialing committee was only evaluating the applicant and was not conducting an internal evaluation of the institution; thus, the documents submitted with the doctor's application were not subject to the medical records privilege under *Tex. Health & Safety*

*Code Ann. § 161.032. Harper v. Cadenhead, 926 S.W.2d 588, 1995 Tex. App. LEXIS 3911 (Tex. App. Eastland 1995), vacated by 927 S.W.2d 24, 1996 Tex. LEXIS 105, 39 Tex. Sup. Ct. J. 1046 (Tex. 1996).*

20. Hospital's accreditation reports prepared by Joint Commission on Accreditation of Healthcare Organizations were privileged from discovery and not subject to subpoena, under *Tex. Health & Safety Code Ann. § 161.032*, in a medical malpractice action brought against hospital. *Humana Hosp. Corp. v. Spears-petersen, 867 S.W.2d 858, 1993 Tex. App. LEXIS 3493 (Tex. App. San Antonio 1993).*

21. Hospital's documents pertaining to its credential committees' evaluation of a doctor, were not discoverable in a malpractice action under former Tex. Rev. Civ. Stat. Ann. art. 4447d, § 3. *Harris Hosp. v. Schattman, 734 S.W.2d 759, 1987 Tex. App. LEXIS 8230 (Tex. App. Fort Worth 1987).*

22. Hospital was entitled to a protective order because it established a prima facie case under *Tex. R. Civ. P. 193.3,* which was not controverted, that documents were used in the credentialing and peer review process were privileged under *Tex. Health & Safety Code Ann. § 161.032(a)* and *Tex. Occ. Code Ann. § 160.007* and that there was no written waiver under § 160.007(e). *In re Rio Grande Reg'l Hosp., 2011 Tex. App. LEXIS 1934 (Tex. App. Corpus Christi Mar. 14 2011).*

23. Mandamus relief was conditionally granted because a trial court abused its discretion by failing to exclude a hospital's confidential quality review occurrence report in a visitor's premises liability case; the privilege under *Tex. Occ. Code Ann. § 160.007* and *Tex. Health & Safety Code Ann. § 161.032* was not limited to direct patient care. *In re Methodist Dallas Med. Ctr., 2013 Tex. App. LEXIS 5834 (Tex. App. Dallas May 9 2013).*

24. Medical facility that did not raise the medical committee exemption to production requirements before the trial court, pursuant to *Tex. Health & Safety Code Ann. § 161.032*, and did not argue on appeal the work product, attorney-client, and investigative privileges it had raised at trial, could not raise the medical committee exemption that was not specifically pleaded pursuant to *Tex. R. Civ. Proc. 166b. Univ. of Tex. Med. Branch v. Engelke, 1990 Tex. App. LEXIS 86 (Tex. App. Houston 1st Dist. Jan. 17 1990).*

25. Hospital's infection surveillance reports which related to patient's claim that she contracted a severe pseudomonas infection while undergoing an operation to repair a broken leg were not exempt from discovery under the hospital committee and peer review statutes and the Texas Medical Practice Act because they were made or maintained in the regular course of business by the hospital. *In re Methodist Hosp., 982 S.W.2d 112, 1998 Tex. App. LEXIS 3247 (Tex. App. Houston 1st Dist. 1998).*

26. Appellants had the burden to prove the privilege under *Tex. Health & Safety Code Ann. § 161.032(a),* (f) applied to the information the individual sought, and in order to make a prima facie showing of privilege at the hearing, appellants had to present evidence to support the privilege, for purposes of *Tex. R. Civ. P. 199.6. Nighthawk Radiology Servs., L.L.C. v. Reyes, 2012 Tex. App. LEXIS 2078 (Tex. App. Eastland Mar. 15 2012).*

27. Appellants, who asserted a privilege under *Tex. Health & Safety Code Ann. § 161.032(a),* (f), had the burden to

show an abuse of discretion by the trial court in this interlocutory appeal. *Nighthawk Radiology Servs., L.L.C. v. Reyes, 2012 Tex. App. LEXIS 2078 (Tex. App. Eastland Mar. 15 2012).*

28. Record contained no proof of any facts that would have established whether a privilege under *Tex. Health & Safety Code Ann. § 161.032(a)*, (f) applied, no testimony was presented for purposes of *Tex. R. Civ. P. 199.6*, and the court was unable to find the purported affidavit of a witness; even if the court found that document in the record, the purported affidavit had no jurat and was not signed, for purposes of *Tex. Gov't Code Ann. § 312.011(1)*, and because the court had no record of evidence before the trial court to support the claim, the court could not find an abuse of discretion on the trial court's part when it denied motions to quash and for protective orders. *Nighthawk Radiology Servs., L.L.C. v. Reyes, 2012 Tex. App. LEXIS 2078 (Tex. App. Eastland Mar. 15 2012).*

29. Where a surgical resident's personnel file had no bearing on Federal Tort Claim Act claims against the government in a case that also involved common negligence claims against the resident and a hospital, pursuant to *Fed. R. Evid. 501*, Texas privilege law applied to the state law issues notwithstanding the presence of the federal claims; thus, the resident's credentialing file, to the extent that it was generated and maintained by the Graduate Medical Education Committee of the hospital, was privileged under the medical committee and peer review privilege of *Tex. Health & Safety Code Ann. § 161.032* and *Tex. Occ. Code Ann. § 160.007. Garza v. Scott & White Mem. Hosp., 234 F.R.D. 617, 2005 U.S. Dist. LEXIS 42382 (W.D. Tex. 2005).*

30. Hospital's infection surveillance reports which related to patient's claim that she contracted a severe pseudomonas infection while undergoing an operation to repair a broken leg were not exempt from discovery under the hospital committee and peer review statutes and the Texas Medical Practice Act because they were made or maintained in the regular course of business by the hospital. *In re Methodist Hosp., 982 S.W.2d 112, 1998 Tex. App. LEXIS 3247 (Tex. App. Houston 1st Dist. 1998).*

31. Affidavits submitted by an anesthesiologist and a medical center stated that the documents requested, incident reports, were prepared for a peer review committee upon its request and not in the regular course of business, and the court found that these affidavits provided sufficient prima facie proof, under *Tex. R. Civ. P. 193.4(a)*, that the peer review privilege under *Tex. Health & Safety Code Ann. § 161.032(e)*, (f), *Tex. Occ. Code Ann. § 160.007(a)*, (c), (e), and *42 U.S.C.S. § 11137*(b) might have covered the documents at issue. The trial court was required to conduct an in camera inspection of the documents, which the trial court did not do, and this amounted to an abuse of discretion for which mandamus relief was granted because there was no adequate remedy by appeal. *In re Belmore, 2004 Tex. App. LEXIS 8160 (Tex. App. Dallas Sept. 8 2004).*

32. Records and proceedings of a medical committee that relate to initial credentialing are not business records within the meaning of the Tex. Health & Safety Code Ann. Art. § 161.032(c), and therefore do not lose their privileged character under that section of the *Health and Safety Code. Irving Healthcare Sys. v. Brooks, 927 S.W.2d 12, 1996 Tex. LEXIS 100, 39 Tex. Sup. Ct. J. 1030 (Tex. 1996).*

33. Pursuant to former Tex. Rev. Civ. Stat. Ann. art. 4495b, § 5.06 and *Tex. Health & Safety Code Ann. § 161.032*, except for the hospital's bylaws, rules, and regulations of the board of trustees or medical staff, documents related to the hospital's initial grant of hospital privileges to a doctor, against whom medical malpractice action was brought, were not discoverable. *Brownwood Reg'l. Hosp. v. Eleventh Court of Appeals, 927 S.W.2d 24, 1996 Tex. LEXIS 105, 39 Tex. Sup. Ct. J. 1046 (Tex. 1996).*

34. In a physician's suit against media for reports of his loss of staff privileges, documents and files generated for and by

a hospital credentialing committee in its investigation and review of a physician's initial application for staff privileges were protected from discovery pursuant to former Tex. Rev. Civ. Stat. Ann. art. 4495b, § 5.06 and *Tex. Health & Safety Code Ann. § 161.032. Memorial Hosp.-the Woodlands v. McCown, 927 S.W.2d 1, 1996 Tex. LEXIS 110, 39 Tex. Sup. Ct. J. 1021 (Tex. 1996).*

35. Where the hospital sought mandamus relief from the trial court's order to submit records, the court found that the hospital's peer-review committee's evaluation of a physician's competency and quality of medical services rendered by him were privileged, pursuant to former Tex. Rev. Civ. Stat. Ann. art. 4495(b), § 1.03(9) and *Tex. Health & Safety Code Ann. § 161.032*; although the initial credentialing information obtained by the credentialing committee was not privileged because it was determining whether a physician was qualified to practice at its hospital, the documents and correspondence relating to the Texas State Board of Medical Examiner's investigation of physician were privileged under former Tex. Rev. Civ. Stat. Ann. art. 4495(b), § 5.06(s). *Riverside Hosp. v. Garza, 894 S.W.2d 850, 1995 Tex. App. LEXIS 435 (Tex. App. Corpus Christi 1995),* overruled by *Memorial Hosp.-The Woodlands v. McCown, 927 S.W.2d 1, 1996 Tex. LEXIS 110, 39 Tex. Sup. Ct. J. 1021 (Tex. 1996).*

36. State mental hospital waived the hospital committee privilege under Tex. Health & Safety 161.032 where the hospital's superintendent reviewed the record of the patient's psychological autopsy following the patient's suicide, and before responding to a senator's inquiries with information that disclosed a significant part of the psychological autopsy. *Terrell State Hosp. v. Ashworth, 794 S.W.2d 937, 1990 Tex. App. LEXIS 2355 (Tex. App. Dallas 1990).*

37. Medical facility that did not raise the medical committee exemption to production requirements before the trial court, pursuant to *Tex. Health & Safety Code Ann. § 161.032*, and did not argue on appeal the work product, attorney-client, and investigative privileges it had raised at trial, could not raise the medical committee exemption that was not specifically pleaded pursuant to *Tex. R. Civ. Proc. 166b. Univ. of Tex. Med. Branch v. Engelke, 1990 Tex. App. LEXIS 86 (Tex. App. Houston 1st Dist. Jan. 17 1990).*

38. Even though the identities of the members of a hospital's committee were not privileged under former Tex. Rev. Civ. Stat. Ann. art. 4447d, § 3 (now *Tex. Health & Safety Code Ann. § 161.032*), they could not be compelled to testify about matters that came to their attention while acting in furtherance of the committee's purpose and function. *Santa Rosa Med. Ctr. v. Spears, 709 S.W.2d 720, 1986 Tex. App. LEXIS 13033 (Tex. App. San Antonio 1986).*

39. Trial court did not waive a hospital's exemption from discovery under *Tex. Health & Safety Code Ann. § 161.032(a)* when it released infection control committee reports to the patient in a medical malpractice action; the privilege belonged to the hospital, not the trial court, and production was involuntary from the hospital's standpoint. *In re University of Texas Health Ctr., 33 S.W.3d 822, 2000 Tex. LEXIS 94, 44 Tex. Sup. Ct. J. 38 (Tex. 2000).*

40. In a medical malpractice action brought by one patient, the hospital did not waive the medical peer review committee privilege under *Tex. Health & Safety Code Ann. § 161.032(a)* when it provided information about its infection control committee's evaluation in answers to interrogatories served by another patient in a suit that was consolidated for discovery. *In re University of Texas Health Ctr., 33 S.W.3d 822, 2000 Tex. LEXIS 94, 44 Tex. Sup. Ct. J. 38 (Tex. 2000).*

41. Hospital in a medical malpractice action complied with recently promulgated *Tex. R. Civ. P. 193* and did not make any waiver under Rule 193 in making its objections to discovery requests on the basis of the medical peer review committee privilege pursuant to *Tex. Health & Safety Code Ann. § 161.032(a)*, even though the amended rule did not become effective until after the patient had served the final notice of deposition and requests for documents and after the hospital had filed its objections to that notice; the hospital's objections and motions made it clear that documents would not be produced and the basis for the objections. *In re University of Texas Health Ctr., 33 S.W.3d 822, 2000 Tex. LEXIS*

*94, 44 Tex. Sup. Ct. J. 38 (Tex. 2000).*

42. Hospital in a medical malpractice action did not waive the medical peer review committee privilege under *Tex. Health & Safety Code Ann. § 161.032(a)* when it failed to object to the second of three deposition notices, where the hospital had already made its objections clear in response to the earlier, virtually identical notice and request for documents; the hospital was not required to reiterate its objections when only the date and time of the deposition were changed. *In re University of Texas Health Ctr., 33 S.W.3d 822, 2000 Tex. LEXIS 94, 44 Tex. Sup. Ct. J. 38 (Tex. 2000).*

43. In a patient's medical malpractice action, Tex. *Rev. Civ. Stat. Ann. art. 4447d* (now *Tex. Health & Safety Code Ann. § 161.032*) did not prohibit the use of the records of a hospital advisory board that indicated that the patient's expert witness' privileges were revoked at the hospital; the purpose of art. 4447d was to restrict unauthorized use of data pertaining to patients examined or treated by physicians, hospitals or other institutions or organizations covered by the statute. *French v. Brodsky, 521 S.W.2d 670, 1975 Tex. App. LEXIS 3435 (Tex. Civ. App. Houston 1st Dist. 1975),* overruled by *Texarkana Memorial Hospital, Inc. v. Jones, 551 S.W.2d 33, 1977 Tex. LEXIS 231, 20 Tex. Sup. Ct. J. 278 (Tex. 1977).*

44. Trial court did not waive a hospital's exemption from discovery under *Tex. Health & Safety Code Ann. § 161.032(a)* when it released infection control committee reports to the patient in a medical malpractice action; the privilege belonged to the hospital, not the trial court, and production was involuntary from the hospital's standpoint. *In re University of Texas Health Ctr., 33 S.W.3d 822, 2000 Tex. LEXIS 94, 44 Tex. Sup. Ct. J. 38 (Tex. 2000).*

45. In a medical malpractice action brought by one patient, the hospital did not waive the medical peer review committee privilege under *Tex. Health & Safety Code Ann. § 161.032(a)* when it provided information about its infection control committee's evaluation in answers to interrogatories served by another patient in a suit that was consolidated for discovery. *In re University of Texas Health Ctr., 33 S.W.3d 822, 2000 Tex. LEXIS 94, 44 Tex. Sup. Ct. J. 38 (Tex. 2000).*

46. Hospital in a medical malpractice action complied with recently promulgated *Tex. R. Civ. P. 193* and did not make any waiver under Rule 193 in making its objections to discovery requests on the basis of the medical peer review committee privilege pursuant to *Tex. Health & Safety Code Ann. § 161.032(a),* even though the amended rule did not become effective until after the patient had served the final notice of deposition and requests for documents and after the hospital had filed its objections to that notice; the hospital's objections and motions made it clear that documents would not be produced and the basis for the objections. *In re University of Texas Health Ctr., 33 S.W.3d 822, 2000 Tex. LEXIS 94, 44 Tex. Sup. Ct. J. 38 (Tex. 2000).*

47. Hospital in a medical malpractice action did not waive the medical peer review committee privilege under *Tex. Health & Safety Code Ann. § 161.032(a)* when it failed to object to the second of three deposition notices, where the hospital had already made its objections clear in response to the earlier, virtually identical notice and request for documents; the hospital was not required to reiterate its objections when only the date and time of the deposition were changed. *In re University of Texas Health Ctr., 33 S.W.3d 822, 2000 Tex. LEXIS 94, 44 Tex. Sup. Ct. J. 38 (Tex. 2000).*

48. In a suit brought by an unsuccessful bidder for an emergency services contract, the trial court did not err in denying a motion to compel production of the bid submissions based on the medical committee privilege in *Tex. Health & Safety Code Ann. §§ 161.031, 161.032* after conducting an in camera inspection pursuant to *Tex. R. Civ. P. 193.4(a)* because a

committee managed the bidding process. Moreover, the contract with the successful bidder lacked relevance under *Tex. R. Civ. P. 192.3(a)*. *Humble Emergency Physicians, P.A. v. Mem'l Hermann Healthcare Sys., 2011 Tex. App. LEXIS 3000 (Tex. App. Houston 1st Dist. Apr. 21 2011)*.

49. In a patient's medical malpractice suit, there was no evidence that the hospital's credentialing committee acted with conscience indifference in not suspending the patient's surgeon, even though the hospital was subjectively aware of the surgeon's drug abuse, as the hospital invoked its confidentiality privilege; thus, the evidence was legally insufficient to support the patient's malicious credentialing claim, and the damages awarded, based on the erroneously submitted claim, were reversed. *KPH Consolidation, Inc. v. Romero, 102 S.W.3d 135, 2003 Tex. App. LEXIS 128 (Tex. App. Houston 14th Dist. 2003)*, affirmed by *166 S.W.3d 212, 2005 Tex. LEXIS 427, 48 Tex. Sup. Ct. J. 752 (Tex. 2005)*.

50. In a patient's medical malpractice action, Tex. *Rev. Civ. Stat. Ann. art. 4447d* (now *Tex. Health & Safety Code Ann. § 161.032*) did not prohibit the use of the records of a hospital advisory board that indicated that the patient's expert witness' privileges were revoked at the hospital; the purpose of art. 4447d was to restrict unauthorized use of data pertaining to patients examined or treated by physicians, hospitals or other institutions or organizations covered by the statute. *French v. Brodsky, 521 S.W.2d 670, 1975 Tex. App. LEXIS 3435 (Tex. Civ. App. Houston 1st Dist. 1975)*, overruled by *Texarkana Memorial Hospital, Inc. v. Jones, 551 S.W.2d 33, 1977 Tex. LEXIS 231, 20 Tex. Sup. Ct. J. 278 (Tex. 1977)*.

51. State mental hospital waived the hospital committee privilege under Tex. Health & Safety 161.032 where the hospital's superintendent reviewed the record of the patient's psychological autopsy following the patient's suicide, and before responding to a senator's inquiries with information that disclosed a significant part of the psychological autopsy. *Terrell State Hosp. v. Ashworth, 794 S.W.2d 937, 1990 Tex. App. LEXIS 2355 (Tex. App. Dallas 1990)*.

52. Appellants had the burden to prove the privilege under *Tex. Health & Safety Code Ann. § 161.032(a)*, (f) applied to the information the individual sought, and in order to make a prima facie showing of privilege at the hearing, appellants had to present evidence to support the privilege, for purposes of *Tex. R. Civ. P. 199.6*. *Nighthawk Radiology Servs., L.L.C. v. Reyes, 2012 Tex. App. LEXIS 2078 (Tex. App. Eastland Mar. 15 2012)*.

53. Appellants, who asserted a privilege under *Tex. Health & Safety Code Ann. § 161.032(a)*, (f), had the burden to show an abuse of discretion by the trial court in this interlocutory appeal. *Nighthawk Radiology Servs., L.L.C. v. Reyes, 2012 Tex. App. LEXIS 2078 (Tex. App. Eastland Mar. 15 2012)*.

54. Record contained no proof of any facts that would have established whether a privilege under *Tex. Health & Safety Code Ann. § 161.032(a)*, (f) applied, no testimony was presented for purposes of *Tex. R. Civ. P. 199.6*, and the court was unable to find the purported affidavit of a witness; even if the court found that document in the record, the purported affidavit had no jurat and was not signed, for purposes of *Tex. Gov't Code Ann. § 312.011(1)*, and because the court had no record of evidence before the trial court to support the claim, the court could not find an abuse of discretion on the trial court's part when it denied motions to quash and for protective orders. *Nighthawk Radiology Servs., L.L.C. v. Reyes, 2012 Tex. App. LEXIS 2078 (Tex. App. Eastland Mar. 15 2012)*.

55. Although it was agreed that physicians could not back-door the substance of communications made to a peer review committee by eliciting testimony from witnesses regarding information that was privileged under *Tex. Occ. Code Ann. § 160.007(e)* and *Tex. Health & Safety Code Ann. § 161.032*, the court did not construe a trial court's order as final and

declined to issue a writ of mandamus to compel protection of the information. *In re Knapp Med. Ctr., 2008 Tex. App. LEXIS 1864 (Tex. App. Corpus Christi Mar. 13 2008).*

56. In a nurse's suit against a hospital when she was injured by a psychiatric patient, the trial court abused its discretion in granting the nurse's motion to compel discovery as to an occurrence report as it was protected by the medical committee and peer review privileges under *Tex. Health & Safety Code Ann. § 161.032*; even if the document did not relate to the nurse's medical care, it was a document created for and reviewed by the hospital committee in the evaluative process of developing and maintaining a safe hospital environment. *In re Intracare Hosp., 2007 Tex. App. LEXIS 7488 (Tex. App. Houston 14th Dist. Sept. 13 2007).*

57. In a medical malpractice action brought against a nursing home facility, certain records made in the ordinary course of business were not privileged under the medical committee privilege, in accordance with *Tex. Health & Safety Code §§ 161.031* and *161.032. In re Living Ctrs. of Tex., Inc., 175 S.W.3d 253, 2005 Tex. LEXIS 770, 49 Tex. Sup. Ct. J. 37 (Tex. 2005).*

58. In accordance with the definitions in *Tex. Health & Safety Code § 161.032(f)* and *Tex. Occ. Code Ann. § 151.002(a)(5)(B)*, nursing homes are protected by the medical committee, medical peer review, and nursing peer review privileges to the same extent as hospitals. *In re Living Ctrs. of Tex., Inc., 175 S.W.3d 253, 2005 Tex. LEXIS 770, 49 Tex. Sup. Ct. J. 37 (Tex. 2005).*

59. Trial court abused its discretion when, in a medical malpractice action, it denied a nursing home facility's assertion of the medical peer review privilege under *Tex. Occ. Code Ann. § 160.007(a)* and the quality assessment and assurance (QA & A) privilege under *Tex. Health & Safety Code Ann. §§ 161.031, 161.032* and 40 Tex. Admin. Code § 19.1917(a) on the basis of superficial indicators, such as the lack of a QA & A privilege stamp and the lack of the word "committee" in the name of certain documents. *In re Living Ctrs. of Tex., Inc., 175 S.W.3d 253, 2005 Tex. LEXIS 770, 49 Tex. Sup. Ct. J. 37 (Tex. 2005).*

60. Records and determinations of, and communications to, a hospital's quality review committee were protected by the medical peer review committee privilege under *Tex. Occ. Code Ann. § 160.007(e)* and *Tex. Health & Safety Code Ann. § 161.032(f)*. Under the hospital's bylaws, this committee could perform a peer review evaluation of an incident underlying a health care liability claim and, in connection with a peer review, generate a peer review file containing confidential information that was not kept in the regular course of business. *Martinez v. Abbott Labs., 146 S.W.3d 260, 2004 Tex. App. LEXIS 8064, CCH Prod. Liab. Rep. P17113 (Tex. App. Fort Worth 2004).*

61. Where an incident report was not made for a patient's individual patient record but was made specifically for a medical committee's use, the documents and proceedings generated by the investigation were protected by the medical committee privilege under *Tex. Health & Safety Code Ann. § 161.032(a). Martinez v. Abbott Labs., 146 S.W.3d 260, 2004 Tex. App. LEXIS 8064, CCH Prod. Liab. Rep. P17113 (Tex. App. Fort Worth 2004).*

62. Hospital's infection surveillance reports which related to patient's claim that she contracted a severe pseudomonas infection while undergoing an operation to repair a broken leg were not exempt from discovery under the hospital committee and peer review statutes and the Texas Medical Practice Act because they were made or maintained in the regular course of business by the hospital. *In re Methodist Hosp., 982 S.W.2d 112, 1998 Tex. App. LEXIS 3247 (Tex. App. Houston 1st Dist. 1998).*

63. Documents relating to a hospital's decision to grant or deny a doctor's application for staff privileges at the facility were discoverable in relators' negligence suit against the health care providers, because the credentialing committee was only evaluating the applicant and was not conducting an internal evaluation of the institution; thus, the documents submitted with the doctor's application were not subject to the medical records privilege under *Tex. Health & Safety Code Ann. § 161.032. Harper v. Cadenhead, 926 S.W.2d 588, 1995 Tex. App. LEXIS 3911 (Tex. App. Eastland 1995),*

vacated by *927 S.W.2d 24, 1996 Tex. LEXIS 105, 39 Tex. Sup. Ct. J. 1046 (Tex. 1996)*.

64. Nursing home operator's quality assessment and assurance procedures did not affect the Texas Department of Aging and Disability Services's statutory and regulatory authority to obtain and use the operator's *40 Tex. Admin. Code § 19.1923* incident reports and tracking/trending documents-i.e., its resident incident reports and incident logs-including using information from those documents in a de-identified final, written report; because the underlying investigation of the operator was initiated in connection with a complaint regarding a nursing home resident, and resulted in the written investigation report that was at issue, the Department's de-identified written investigation report of the operator was public information. *Parkview Nursing & Rehab. Ctr. v. Tex. Dep't of Aging & Disability Servs., 2014 Tex. App. LEXIS 297 (Tex. App. Austin Jan. 10 2014)*.

65. Mandamus relief was conditionally granted because a trial court abused its discretion by failing to exclude a hospital's confidential quality review occurrence report in a visitor's premises liability case; the privilege under *Tex. Occ. Code Ann. § 160.007* and *Tex. Health & Safety Code Ann. § 161.032* was not limited to direct patient care. *In re Methodist Dallas Med. Ctr., 2013 Tex. App. LEXIS 5834 (Tex. App. Dallas May 9 2013)*.

66. Hospital was entitled to a protective order because it established a prima facie case under *Tex. R. Civ. P. 193.3*, which was not controverted, that documents were used in the credentialing and peer review process were privileged under *Tex. Health & Safety Code Ann. § 161.032(a)* and *Tex. Occ. Code Ann. § 160.007* and that there was no written waiver under § 160.007(e). *In re Rio Grande Reg'l Hosp., 2011 Tex. App. LEXIS 1934 (Tex. App. Corpus Christi Mar. 14 2011)*.

67. In a premises liability case, reports prepared for the use of a hospital safety committee were subject to the medical committee privilege of *Tex. Health & Safety Code Ann. § 161.032(a)* because they were intended for an evaluation of medical services by a medical committee, as defined in *Tex. Health & Safety Code Ann. § 161.031* to include any committee of a hospital. *In re Christus Health Southeast Tex., 2007 Tex. App. LEXIS 287 (Tex. App. Beaumont Jan. 18 2007)*.

68. Where a surgical resident's personnel file had no bearing on Federal Tort Claim Act claims against the government in a case that also involved common negligence claims against the resident and a hospital, pursuant to *Fed. R. Evid. 501*, Texas privilege law applied to the state law issues notwithstanding the presence of the federal claims; thus, the resident's credentialing file, to the extent that it was generated and maintained by the Graduate Medical Education Committee of the hospital, was privileged under the medical committee and peer review privilege of *Tex. Health & Safety Code Ann. § 161.032* and *Tex. Occ. Code Ann. § 160.007. Garza v. Scott & White Mem. Hosp., 234 F.R.D. 617, 2005 U.S. Dist. LEXIS 42382 (W.D. Tex. 2005)*.

69. Nursing home operator's quality assessment and assurance procedures did not affect the Texas Department of Aging and Disability Services's statutory and regulatory authority to obtain and use the operator's *40 Tex. Admin. Code § 19.1923* incident reports and tracking/trending documents-i.e., its resident incident reports and incident logs-including using information from those documents in a de-identified final, written report; because the underlying investigation of the operator was initiated in connection with a complaint regarding a nursing home resident, and resulted in the written investigation report that was at issue, the Department's de-identified written investigation report of the operator was public information. *Parkview Nursing & Rehab. Ctr. v. Tex. Dep't of Aging & Disability Servs., 2014 Tex. App. LEXIS 297 (Tex. App. Austin Jan. 10 2014)*.

OPINIONS OF ATTORNEY GENERAL

1. Pursuant to the Medical Practice Act, the governing body of a hospital district acts as a medical peer review committee when it decides whether a physician should receive hospital privileges, evaluates the competence of a physician, or evaluates the quality of medical and health care services at the district's hospital, to the extent that the evaluation involves discussions or records that specifically identify an individual patient or physician. *Section 161.032(a) of the Texas Health and Safety Code* exempts a hospital district's proceedings as a medical peer review committee from the requirements of the Open Meetings Act. Tex. Op. Att'y Gen. JC-0108 (1999).

TREATISES AND ANALYTICAL MATERIALS

1. 4-50 Texas Civil Trial Guide § 50.30, PRIVILEGES, SPECIFIC ISSUES: MISCELLANEOUS PRIVILEGES, Miscellaneous Privileges: Legal Background, Texas Civil Trial Guide.

2. *6-90 Dorsaneo, Texas Litigation Guide § 90.06*, Pretrial Practice (Chs. 1-114), Discovery (Chs. 90-98), Privileges, Dorsaneo, Texas Litigation Guide.

3. *1-11 Texas Torts and Remedies § 11.05*, PROFESSIONAL LIABILITY, HEALTH CARE PROVIDERS, Action for Professional Negligence, Texas Torts and Remedies.

4. 1-11 Texas Torts and Remedies § 11.101, PROFESSIONAL LIABILITY, HEALTH CARE PROVIDERS, PRACTICE NOTE--Proving and Defending a Cause of Action for the Negligent Grant or Retention of Hospital Privileges to an Incompetent Physician, Texas Torts and Remedies.

5. *5-101 Texas Torts and Remedies § 101.02*, REMEDIES, DISCOVERY, Scope and Limitations of Discovery, Texas Torts and Remedies.

LAW REVIEWS

1. *49 Baylor L. Rev. 607*, ARTICLE: The New Rules of Show and Tell: Identifying and Protecting the Peer Review and Medical Committee Privileges, Summer, 1997.

2. *36 Hous. L. Rev. 1609*, ARTICLE: PATIENT SAFETY, RISK REDUCTION, AND THE LAW, 1999.

3. *47 SMU L. Rev. 799*, Civil Evidence, Spring, 1994.

4. *48 SMU L. Rev. 1303*, ARTICLE: Healthcare Law, May-June 1995.

5. *50 SMU L. Rev. 1275*, ARTICLE: Health Care Law, May / June, 1997.

6. *50 SMU L. Rev. 1409*, ARTICLE: Personal Torts, May / June, 1997.

7. *53 SMU L. Rev. 699*, ANNUAL SURVEY OF TEXAS LAW ARTICLE: Civil Evidence, Summer, 2000.

8. *54 SMU L. Rev. 1167*, ARTICLE: Civil Evidence, Summer, 2001.

9. *55 SMU L. Rev. 1113*, ARTICLE: Health Care Law, Summer, 2002.

10. *38 Houston Lawyer 44,* DEPARTMENT: KEEPING UP WITH.. .: TEXAS SUPREME COURT SUSTAINS HIGH THRESHOLD FOR WAIVING PEER REVIEW PRIVILEGE, By Patrice Pujol, January/February, 2001, Copyright (c) 2001 Houston Bar Association, The Houston Lawyer.

********** Print Completed **********

Time of Request: Friday, April 10, 2015   09:53:37 EST

Print Number:    1827:508576789
Number of Lines: 445
Number of Pages: 13

13090F

Send To:  DAVIS, WES
          MACDONALD DEVIN PC
          1201 ELM ST STE 3800 RENAISSANCE TOWER
          DALLAS, TX 75270